**Giles E. MILLER et al., Plaintiffs-Appellants,**

v.

**MEINHARD-COMMERCIAL CORPORATION, Defendant-Appellee.**

No. 71-3255.

United States Court of Appeals, Fifth Circuit.

June 30, 1972.

William Andress, Jr., Andress & Woodgate, Dallas, Tex., for plaintiffs-appellants.

J. Richard Gowan, James H. Wallenstein, Johnson, Bromberg, Leeds &

Riggs, Dallas, Tex., for defendant-appellee.

Before GOLDBERG, DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge:

Miller and others as trustees of the Giles E. Miller Co. Pension Trust, a creditor in a Bankruptcy Act Chapter XI arrangement, filed suit against another creditor, Meinhard-Commercial Corp., who participated in the arrangement, nine months after the arrangement plan was confirmed. Miller alleges that Meinhard made fraudulent representations at a creditor's meeting that induced him to acquiesce in the Chapter XI arrangement rather than initiate proceedings under Chapter X. The district court granted Meinhard's motion to dismiss. We affirm.

On September 20, 1968, the debtor, Texas Textile Mills, petitioned the bankruptcy court under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. §§ 701–799, to continue in business under financing agreements with, and to borrow money from, Meinhard, a secured creditor. The petition alleged, *inter alia*, that Meinhard had expressed a willingness to advance approximately $50,000 to meet immediate needs and to advance up to an additional $100,000 from time to time in the future, such advances to be made at all times within the sole discretion of Meinhard.

At the first meeting of creditors, on October 28, 1968, the alleged fraudulent representations occurred. Miller, as the trustee of the pension trust, was an unsecured creditor holding $180,000 in debentures of the debtor. He was present at the meeting. Miller asserts that Meinhard represented to him that if the debtor was permitted to remain in possession, Meinhard would continue its financing for another $150,000, but in fact this was never done nor did Meinhard intend to advance sums totalling $150,000. Miller alleges that he relied on the representations and thus refrained from attempting to shift the proceedings to a reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 501–676, which would have affected Meinhard's secured position and would have allowed Miller to collect a greater percentage of its claim.

Miller further alleges that he was damaged when Meinhard, on December 26, 1968, ousted the management of the debtor, took charge of its operations, and sold inventory worth $876,660, in which it had a security interest, for $482,215. Miller prays for both actual and compensatory damages.

On January 6, 1969, the debtor applied to the bankruptcy court for an extension of time for filing a plan of arrangement. In that application it recited that $150,000 was advanced by Meinhard during the period from October 28, 1968 through November 4, 1968, but that Meinhard had determined that it did not wish to continue its financing arrangements and that the debtor would be unable to continue its business on a permanent basis. It further requested permission to liquidate its existing inventory in order to reduce the indebtedness to Meinhard and create additional equity for the unsecured creditors. The request for extension and the permission to continue in business for thirty days in order to liquidate the inventory was granted by the referee.

A plan of arrangement was submitted by the debtor on March 5, 1969, which explained in detail Meinhard's past participation in the affairs of the debtor and its portion of recovery from the assets. At a creditors' meeting on March 21, 1969, Meinhard and the debtor's equipment lessor objected to the plan. Changes were tentatively agreed upon. On April 1, 1969, proposed modifications to the plan of arrangement were then sent to all creditors. On April 14, 1969, the referee approved the plan noting that no objections were filed or even made by any creditor and that the arrangement and its acceptance were in

good faith and not procured by any means forbidden by the Bankruptcy Act. The complaint *sub judice* was filed by Miller on January 15, 1970.

■ Miller did not join in the acceptance of the plan of arrangement. It is undisputed, however, that Miller had notice of all the proceedings and participated in them. Section 367(1) of the Bankruptcy Act, 11 U.S.C.A. § 767(1), provides:

> Upon confirmation of an arrangement * * * the arrangement and its provisions shall be binding upon the debtor, upon any person issuing securities or acquiring property under the arrangement and upon all creditors of the debtor, whether or not they are affected by the arrangement or have accepted it or have filed their claims, and whether or not their claims have been scheduled or allowed and are allowable; . . . .

We entertain no doubt that the confirmation of the arrangement by the referee was proper and its effect is *res judicata* to the claim raised in this suit.

■ An arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court, *see* Stoll v. Gottlieb, 1938, 305 U.S. 165, 170–171, 59 S.Ct. 134, 83 L.Ed. 104, and any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine *res judicata*. Cromwell v. County of Sac, 1876, 94 U.S. 351, 352, 24 L.Ed. 195; 9 Collier on Bankruptcy ¶ 9.25 p. 335 (14th Ed. 1971).

Miller argues the inapplicability of *res judicata* to the facts because the cause of action asserted, fraud, has nothing to do with the arrangement proceeding, the bankrupt, or the estate. The fact that the alleged fraud occurred in a meeting of creditors was, according to Miller, just coincidental. Miller also argues that he is not seeking to modify or attack the order of the referee confirming the arrangement.

We are wholly unpersuaded by Miller's arguments. This suit would do everything that Miller says it does not do.

■ The suit is no more than a collateral attack upon the referee's order confirming the plan of arrangement; the integrity of the judgment is challenged. Higginson v. Schoeneman, 1951, 89 U.S.App.D.C. 126, 190 F.2d 32, 34. Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment. Mitchell v. Village Creek Drainage Dist., 8 Cir. 1946, 158 F.2d 475, 478. Through his fraud action, Miller is indirectly asserting that the Chapter XI proceeding should never have been approved and that a Chapter X procedure should have been decreed instead. The suit obviously turns upon what could or should have happened in the bankruptcy proceeding. It is specious to argue that Miller's action in fraud is unrelated or only coincidentally related to the merits of the bankruptcy proceeding.

■ For *res judicata* to apply there must be an identity of both parties and issues. The identity of the parties gives us little pause for Miller and Meinhard were both creditors who participated in the bankruptcy proceedings and are therefore bound by the judgment. 11 U.S.C.A. § 767(1). The adversity between creditors, especially the secured vis-a-vis the unsecured, in bankruptcy can be just as polarized as if they were directly opposed to one another as plaintiff and defendant.

■ We also perceive the issues to be the same. *Res judicata* applies where the subject matter is the same, "not only to every matter which was offered and received to sustain or defeat the claim or demand, but also as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, *supra;* Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 597, 63 S.

Ct. 715, 92 L.Ed. 898; Midessa Television Co. v. Motion Pictures for Television, Inc., 5 Cir. 1961, 290 F.2d 203, 204, cert. denied, 1961, 368 U.S. 827, 82 S.Ct. 47, 7 L.Ed.2d 30. The alleged fraud of Meinhard is precisely a matter which might have been offered to shift the Chapter XI proceeding to a Chapter X action. The very gist of this suit is the allegation that the arrangement was somehow improper. To sanction it would be in effect to reopen the bankruptcy proceedings and retry the merits in a collateral proceeding. *See* Von Moschzisker, *Res Judicata,* 38 Yale L. J. 299, 314 (1928); *see also* Annot., 135 A.L.R. 695 (1941). The fact that it is brought under a different label in an independent action cannot camouflage its inevitable effect. *Cf.* Hogan v. Morris, 5 Cir. 1970, 424 F.2d 424, 425.

▪ Finally, though fraud is alleged in the complaint, it is not extrinsic fraud which might give rise to the reopening of a former judgment in an independent equitable proceeding. United States v. Throckmorton, 1878, 98 U.S. 61, 68, 25 L.Ed. 93; Midessa Television Co. v. Motion Pictures for Television, Inc., *supra;* Restatement of Judgments §§ 62(b), 121(a), and 126(b). Moreover, such relief, even if available, is equitable in nature and the equities do not lie with Miller. He did not allege that he became aware of the fraud after the bankruptcy proceedings had become final. On the contrary, the allegations are that the fraudulent acts took place during the proceedings and that Miller was aware of them, either actually or constructively, at that time yet failed to bring them to the attention of the referee. Having elected not to raise the fraud issues at that time, Miller is foreclosed from asserting them now. Chicot County Drainage Dist. v. Baxter State Bank, 1940, 308 U.S. 371, 375, 60 S.Ct. 317, 84 L.Ed. 329; Midessa Television Co. v. Motion Pictures for Television, Inc., *supra.*

The judgment of the district court is affirmed.