Rodney D. HENDRICK,
Plaintiff–Appellant,

v.

H.E. AVENT, et al., An Unincorporated
Association, Defendants–Appellees.

No. 89–3102.

United States Court of Appeals,
Fifth Circuit.

Jan. 11, 1990.

Randall A. Smith, George C. Freeman, III, Michael R. Fontham, Stone Pigman, Walther, Wittman & Hutchinson, New Orleans, La., for plaintiff-appellant.

John L. Avant, Baton Rouge, La., for John C. Lindsay and Brantley T. Burnett.

Russ M. Herman, Steven J. Lane, Matthew P. Chenevert, New Orleans, La., R. Wayne Byrd, Florence, S.C., for H.E. Avent, Fink and Kinney.

Before GARZA, WILLIAMS, and DAVIS, Circuit Judges.

GARZA, Circuit Judge:

Rodney D. Hendrick appeals the district court's grant of summary judgment in favor of defendants-appellees. 96 B.R. 620. Because we find this action is an improper collateral challenge to a final judgment and cannot constitute a proper direct challenge, we affirm.

## I. How It All Started.

Rodney D. Hendrick ("Hendrick") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on November 21, 1983, in the Bankruptcy Court for the Middle District of Louisiana.[1] The bankruptcy court appointed Donald P. Starns ("Starns" or "Trustee") trustee of the debtor's estate. At the time of filing, Hendrick owned 310 shares of stock in a closely-held South Carolina corporation named PFC, Inc., d/b/a Stingray Boat Company ("Stingray"). On February 7, 1985, Hendrick's bankruptcy trustee, Starns, applied for authorization to sell Hendrick's stock for $150,000. Hendrick filed an objection to the sale of his Stingray stock.

On February 13, 1985, the bankruptcy court conducted an adversary hearing on the trustee's application to sell stock. The result of the hearing was the authorization and confirmation of the sale of Hendrick's stock in Stingray to James A. Fink, Jr., with the express reservation that the trustee conduct an investigation into the facts alleged by Hendrick. Immediately after the hearing, Hendrick's stock was delivered to James A. Fink, Jr. and the trustee received $150,000, which was paid by a cashier's check drawn on a South Carolina bank. As further consideration for this transaction, Hendrick was dismissed as a party in a suit which had been filed against him in the Court of Common Pleas for the County of Darlington, South Carolina by Francis A. Collins, who was an officer, stockholder, and director of Stingray.

The next day, February 14, 1985, the Trustee applied to the bankruptcy court to employ special counsel to investigate the circumstances surrounding the February 13, 1985 stock sale. Pursuant to this investigation, the bankruptcy court issued three separate orders for Bankruptcy Rule 2004 examinations, due to the trustee's ongoing concern about the integrity of the offer and certain undisclosed and unknown facts. At no time did the trustee, Hendrick, or any other party to the bankruptcy proceeding file an appeal or any other post trial motions under Rules 52(b), 59(e), or 60(b)[2] of the Federal Rules of Civil Procedure to overturn, vacate, or modify the February 13, 1985 judgment of the bankruptcy court.

After the third set of depositions in the investigation, the trustee sought and obtained approval of the bankruptcy court to file suit in federal district court. On February 12, 1986, the trustee filed suit on behalf of Hendrick asserting fraud claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq., and state law. Some time thereafter, the trustee, with the approval of the bankruptcy court, abandoned the claims as to Hendrick. On November 6, 1987, Hendrick and the trustee filed a second amended complaint, which added additional state law claims based on alleged misrepresentations, omissions, breaches of fiduciary duty, and sought rescission of the sale.

On December 4, 1987, the appellees filed a motion to dismiss and, in the alternative, for summary judgment. The appellees based their motion on the following grounds:

1. The order of the bankruptcy court was res judicata;

2. The suit was an impermissible collateral attack on a final judgment rendered by the bankruptcy court from which no appeal was taken; and

3. The second amended complaint could not be construed as a Rule 60(b) motion under the Federal Rules of Civil

---

**1.** *In re Rodney D. Hendrick*, No. 83–00787.

**2.** Rule 60(b) provides, in pertinent part:
On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.... The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken....

Procedure, and even if it was so considered, the motion was not timely filed.

The motion was denied with the suggestion that the court would be willing to reconsider the ruling if the motion were re-urged. On August 16, 1988, the motion was re-urged adding the following grounds:

4. Private rights of action to enforce Rule 10b–5 and RICO claims do not lie with regard to the sale and purchase of securities in an exchange approved by the court; and

5. James A. Fink, Jr. was absolutely immune from civil liability for any misstatement or omission as a witness in the bankruptcy court.

On December 2, 1988, the trial court advised the parties that a motion for summary judgment had been granted in favor of all defendants. On January 24, 1989, the trial court issued its written judgment. Hendrick brought this appeal the next day.

## II. The Method of Analysis.

A motion for summary judgment focuses the court's attention merely on disputes of material facts.[3] While the facts alleged by Hendrick are tantalizing, this appeal focuses only on the available methods of attacking the bankruptcy court's approval of the stock sale. At no time did the trustee, Hendrick, or any other party to the bankruptcy proceeding file an appeal or any other post trial motions under Rules 52(b), 59(e) or 60(b) of the Federal Rules of Civil Procedure to overturn, vacate, or modify the February 13, 1985 judgment of the bankruptcy court.

In light of this absence of appeal, the material facts are contained only in the question of whether these fraud, RICO, and rescission claims can be brought independently or whether they must be in the form of a Rule 60 modification of the judgment of the bankruptcy court. Consequently, the eloquent and intriguing story revealed in appellant's brief, which is quite shocking, is not before us, except that it can be noted that at the time of the bankruptcy court ruling, neither Hendrick nor the court had full knowledge of all that had taken place in a complex scheme of facts.

## III. Application of the Law.

In deciding this case, the district court determined (1) plaintiff's sole remedy to contest the February 13, 1985 order of the bankruptcy court under the facts of this case is through a Rule 60(b) motion; (2) plaintiff has not filed a Rule 60(b) motion; (3) the second amended complaint cannot be treated as a Rule 60(b) motion;[4] (4) even if the second amended complaint is treated as a Rule 60(b)(3) motion, the one year period to file such a motion has expired and cannot be extended by the court; and, (5) even if the second amended complaint is treated as a Rule 60(b) motion to reopen the judgment for fraud on the court, the motion is without merit because there was no fraud committed on the bankruptcy court. The first step in analyzing the district court's analysis is to determine whether the collateral attacks used in this case are barred by res judicata.

### A. Res Judicata

The test in this Circuit for determining whether a claim is barred by the doctrine of res judicata is as follows:

"For a prior judgment to bar an action on the basis of res judicata, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.'" *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir.1983) (en banc), quoting

---

3. Federal Rule of Civil Procedure 56.

4. We must note that not all the parties to the bankruptcy action who would have a right to respond to a Rule 60(b)(3) motion are parties to this suit, including the creditors who received the money and the trustee. Furthermore, the second amended complaint only seeks a rescission of the stock sale, but is silent on reinstating the cause of action which was filed against and by Hendrick in South Carolina and was dismissed by the February 13, 1985 order.

*Kemp v. Birmingham News Co.,* 608 F.2d 1049, 1052 (5th Cir.1979).

### i. Final Judgment.

After conducting an evidentiary hearing on February 13, 1985, the bankruptcy court issued an order which authorized and confirmed the sale of Hendrick's stock in Stingray. The first hurdle is whether the February 13, 1985 order was a final judgment. Neither Hendrick nor any other party appealed the February 13, 1985 order in accordance with Bankruptcy Rule 8001. Appellees contend that this order was a final judgment which can only be attacked by an appeal or by a motion filed pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[5]

Bankruptcy Rule 9021 requires that every judgment "be set forth on a separate document." The order of February 13, 1985, which was prepared by the attorney for the trustee and signed by Judge Wesley Steen, complies with Rule 9021. The District Court found the order signed by the bankruptcy judge on February 13, 1985 to be a final judgment, and found plaintiff's contention that the order was interlocutory in nature was without merit. We find no error in the district court's finding.

The February 13, 1985 order authorized the sale of "all of the estate's shares of stock in PFC, Inc., said sale to be free and clear of all liens, claims, and encumbrances, including any and all alleged co-owner's rights or right of first refusal of Judith Polk Hendrick." Thus, the order was an authorization to sell property of the bankrupt's estate. An order issued by the bankruptcy court authorizing the sale of part of the bankrupt estate is a final judgment[6] even though the order neither closes the bankruptcy case nor disposes of any claim.[7] As this Court stated in *Southmark Properties v. Charles House Corp.,* 742 F.2d 862 (5th Cir.1984):[8]

> There is no real doubt that the district court possessed jurisdiction to authorize and approve a trustee's sale. *See* 11 U.S.C. §§ 515, 516(3).
>
> That the district court's order authorizing the sale of the ... [property] and judgment confirming the sale and passage of title ... operated as "a final judgment on the merits" is evident.

742 F.2d at 870.

Despite the bankruptcy court's reservation, the judgment remains final and the sale authorized. The reservation serves only as an avenue to later appeal that final judgment.

### ii. The Other Elements.

Hendrick claims that, among other things, the parties are not identical, and most importantly, that the same cause of action was not involved in both cases.

The facts asserted by Hendrick, if true, are quite convincing that he clearly did not know the whole story and serious misrepresentations were made. Hendrick thus claims that *D–1 Enterprises, Inc. v. Commercial State Bank,* 864 F.2d 36 (5th Cir. 1989) controls this case. The opinion issued after rehearing in *D–1 Enterprises* states that res judicata has no application to contested matters where the claim sought to be barred could not have been

---

**5.** Bankruptcy Rule 9024 makes Rule 60(b) applicable to bankruptcy proceedings.

**6.** *See, e.g., In re Sax,* 796 F.2d 994, 996 (7th Cir.1986). (" 'Final' is interpreted more liberally in bankruptcy cases than in other federal cases. *In re Barker,* 768 F.2d 191, 193 (7th Cir.1985) ... Orders approving or failing to approve a sale of debtor's property are considered final decisions and are immediately appealable.")

**7.** 28 U.S.C. § 158(d); *Met–L–Wood Corp. v. Pipin,* 861 F.2d 1012, 1016 (7th Cir.1988) (An order which authorized the sale of the debtor's property "is appealable as a final order under 28 U.S.C. § 158(d)"); *See also In re Sax,* 796 F.2d 994 (7th Cir.1986); *In re Delta Services Industries,* 782 F.2d 1267 (5th Cir.1986); *Southmark Properties v. Charles House Corp.,* 742 F.2d 862 (5th Cir.1984); I. Collier on Bankruptcy § 3.03 at 3–156 (5th ed. 1986).

**8.** *See also, Childress v. Aurora Nat'l Bank (In re Childress),* 851 F.2d 926 (7th Cir.1988); *Bayer v. Nicola (In re Bestmann),* 720 F.2d 484 (8th Cir. 1983); *Sulmeyer v. Karbach Enterprises (In re Exennium, Inc.),* 715 F.2d 1401 (9th Cir.1983); *Gross v. Russo (In re Russo),* 762 F.2d 239 (2d Cir.1985).

effectively litigated. *D–1 Enterprises*, 864 F.2d at 40.

Hendrick asserts that since he was unable to litigate his claims at the bankruptcy court level, and no new claims may be asserted on appeal, that he has no other means to litigate his claims than a separate lawsuit.

The appellees respond, as the district court ruled, that the opportunity to litigate these claims was given during the bankruptcy hearing, and now the only way to assert those claims is through a direct attack on the judgment.

The distinction between *D–1 Enterprises, Inc. v. Commercial State Bank* and *Southmark Properties v. Charles House Corp.* is a fine but important one. This Court, in *D–1 Enterprises*, carefully outlined the holding of *Southmark* and its application in light of the new decision in *D–1 Enterprises*. This Court focused on whether the claim sought to be barred could have been effectively litigated.

In *Southmark*, the sale was a court-ordered public cash auction, in which the secured creditor bid the full amount of its claimed debt. The orders of sale and confirmation, therefore, necessarily determined not only that the amount bid was actually owing, but also that the maturity of the debt has been validly accelerated. That is, that the sale provided a valid transfer of title to the buyer, which is inconsistent with the crux of the debtor's later action. Insofar as the later action claimed that the creditor "improperly assumed ownership of ... [the property] by way of the [reorganization] trustee's sale," it was likewise inconsistent with the sale and confirmation orders. 742 F.2d at 869. The orders were, therefore, res judicata to the later action.

In *D–1 Enterprises*, the context is quite different. The abandonment order there, which does not contemplate a public cash auction, did not necessarily determine the precise amount of the debt or that it was validly accelerated, and the subsequent adversary proceeding does not in substance challenge the creditor's acquisition of title. 864 F.2d at 39.

The scenario before us today closely resembles that of *Southmark*, in that the determination by the bankruptcy court is the final authorization of the transfer of title and the subsequent adversary proceeding is a direct challenge to that transfer of title. The initial determinations by the bankruptcy court are directly inconsistent with the crux of Hendrick's later actions. Further, as to the opportunity to effectively litigate in the initial proceeding, the trustee in *D–1 Enterprises* was forced to defend the creditor's motion to lift the stay or risk the loss of the estate's assets. In this case, the trustee brought the application to sell debtor's property. This application was done by the trustee at his own election and filed at the time of his choice. Hendrick asserts that while the trustee brought the application, he objected to the sale and was not able to effectively litigate his concern. However, the bankruptcy court authorized independent counsel and depositions, and suggested that any information obtained be returned to the court. Hendrick did not elect to do so. Consequently, the facts do not support the application of *D–1 Enterprises* analysis.

The finality and integrity of the transfer of stock resulting from the bankruptcy court's decision are at stake.[9] As we have found that appellant's later claims were inconsistent with the crux of the initial decision and he had the opportunity to effectively litigate his claim in the bankruptcy court, the proper medium for a challenge to the original bankruptcy court's order is through a direct challenge of that order. The collateral attacks brought later are barred by res judicata.

**B. Direct Attack**

*i. Rule 60(a)*

■ Appellant asserts a claim under Rule 60(a) that the judgment should be

---

**9.** This Court has previously recognized the important interest in the finality of judgments in a bankruptcy case. *Abraham v. Aguilar*, 861 F.2d 873 (5th Cir.1988). See also, *In the Matter of Colley*, 814 F.2d 1008, 1010 (5th Cir.1987), reh'g denied, 818 F.2d 443 (5th Cir.1987), cert. denied, 484 U.S. 898, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987).

corrected because it does not reflect the true intent of the bankruptcy court. This argument is flawed from its inception, in that Rule 60(a) is useful only for correcting clerical mistakes.[10] This Court has previously addressed the question of what constitutes a clerical mistake. In *Harcon Barge Co. v. D & G Boat Rentals*, 784 F.2d 665, 668–69 (5th Cir.1986) (en banc) *cert. denied*, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986), this Court stated:

> The scope of Rule 60(a) is, as we have noted, very limited. In *Dura–Wood Treating Co., Division of Roy O. Martin Lumber Co. v. Century Forest Industries, Inc.*, [694 F.2d 112 (5th Cir.1982) ], the court set out these limits:
>
>> Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another. Such a mistake must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature.... (Citations omitted).

Thus, it is proper to use Rule 60(a) to correct a damages award that is incorrect because it is based on an erroneous mathematical computation, whether the error is made by the jury or by the court. Errors of a more substantial nature are to be corrected by a motion under Rule 59(e) or 60(b). Correction of an error of "substantive judgment," therefore, is outside the reach of Rule 60(a).

Further, in *Warner v. City of Bay St. Louis*, 526 F.2d 1211, 1212 (5th Cir.1976), we refused to treat even the amount of interest to be paid on a judgment as a clerical error. This Court stated that "errors that effect substantial rights of the parties are outside the scope of Rule 60(a)."

*Id.* at 1212. The bankruptcy judge read and signed the judgment. The judgment entered mirrored the one rendered, therefore, the attack resembles a claim of judicial rather than clerical error. Relief granted under this method of attack would clearly undermine the finding of the judgment, which is the policy behind the promulgation of Rule 60(b).

#### ii. Rule 60(b)

■ At the outset, Rule 60(b) requires a motion within a reasonable time not to exceed one (1) year after the judgment was entered or taken.

The district court found the motion to be untimely and without merit. The district court stated that Hendrick made no formal motion under Rule 60(b) in either the bankruptcy court or in the district court. In fact, Hendrick failed to mention Rule 60(b) in the original or three amended complaints, in the pretrial order, or in any amendment to the pretrial order. Even if the district court were to "liberally construe" Hendrick's pleadings, the district court properly determined that the complaint could not have been filed for a number of reasons.[11]

Appellant asserts the characterization of his second amended complaint as a Rule 60(b) motion, only so far as if that is the only method of attacking the bankruptcy court's decision. The law and policy surrounding a Rule 60(b) motion is clear that this motion was intended to be the only method of attacking a final judgment and not to be used in abundance. Consequently, a judicial recharacterization of a lawsuit to fit this mold would be rare indeed. Clearly, making appellant's claim fit under the label of a Rule 60(b) motion would take a recharacterization of the pleadings *plus* a

---

**10.** *See also, Jones v. Anderson–Tully Co.*, 722 F.2d 211, 212 (5th Cir.1984); *Trahan v. First National Bank*, 720 F.2d 832, 833–34 (5th Cir. 1983), judgment of the district court aff'd, 747 F.2d 990 (5th Cir.1984) (per curium). *See also, In re Galiardi*, 745 F.2d 335, 337 (5th Cir.1984); *West Virginia Oil & Gas Co. v. George E. Breece Lumber Co.*, 213 F.2d 702, 705 (5th Cir.1954).

**11.** The amended complaint is not a proper vehicle to bring a Rule 60(b) motion, and, assuming arguendo it was, the request was not timely filed under Rule 60(b). Further, the motion should have been filed in the bankruptcy court, not in the district court, and all of the parties in the original action are not in this action, which would circumvent the sharing of benefits of a Rule 60(b) motion with such parties as the trustee if the motion were to be granted.

relation back in time to the original complaint to fit within the time restraints. The district court properly refused to perform such feats.

## IV. The End Result.

There are several different avenues to bar appellant's claims. First, no motion was made attacking the bankruptcy court's judgment. Second, certainly none of the post-judgment filings could be considered a Rule 60(a) motion. Third, some extensive legal gymnastics would have to be performed to consider the second amended complaint a Rule 60(b) motion and then to have it relate back far enough for it to be timely.

Assuming this is not a direct attack on the judgment, the focus is then whether this collateral attack is barred by res judicata. The key question is whether Hendrick had the opportunity to present his case at the time of the bankruptcy court's ruling. If not, pursuant to *D–1 Enterprises*, the adverse hearing in the bankruptcy court should not be used against him. The facts of *D–1 Enterprises* do not apply to our scenario, and consequently leave Hendrick to litigate his claims in the proper forum of the bankruptcy court.

In sum, the finality of the bankruptcy order mandates that, unless the opportunity to effectively litigate in the bankruptcy court is absent, any future challenges to that order will be either in the form of appeal or amendment of the judgment. Accordingly, the judgment of the district court is, in all things, AFFIRMED.