**In the Matter of Maxcy Gregg HOWE and Dena Crawford Howe, Debtors.**

**Maxcy Gregg HOWE and Dena Crawford Howe, Appellants,**

v.

**Benjamin F. VAUGHAN, et al., Appellees.**

Nos. 89–4513, 89–4548.

United States Court of Appeals, Fifth Circuit.

Sept. 24, 1990.

**1140**

E. Eugene Hastings, Kneipp & Hastings, Monroe, La., for appellants in No. 89–4513.

Winston G. DeCuir, Baton Rouge, La., for appellants in No. 89–4548.

William Lake Hearne, Tucker, Jeter, Jackson & Hickman, Shreveport, La., for Vaughan.

J.J. Caraway, Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for Premier Bank, formerly First Nat'l Bank of Shreveport.

Before KING, GARWOOD and SMITH, Circuit Judges.

KING, Circuit Judge:

Five years after the confirmation of a Chapter 11 bankruptcy plan, the debtors filed lender liability claims in state court against two of their principal creditors. The creditors removed the suit to federal district court, which in turn referred the suit to the bankruptcy court. The bankruptcy court granted the creditors' motion to dismiss, holding that, under the principles of res judicata, the confirmation order barred the debtors' claims. The district court affirmed, as do we.

In a second consolidated case, the debtors also contend that they should be allowed to dismiss their substantially consummated Chapter 11 proceeding and continue under Chapter 12. We hold that the district court did not err in refusing to dismiss the debtors' Chapter 11 proceeding.

*I. Background.*

Maxcy Gregg Howe and Dena Crawford Howe ("the Howes") instituted voluntary Chapter 11 bankruptcy proceedings in 1982. They negotiated a plan of reorganization with their creditors and the bankruptcy court confirmed the plan on January 28, 1983. Five years later, the Howes filed in state court lender liability claims that were removed to federal court and referred to the bankruptcy court. The Howes' creditors, principally Premier Bank ("Premier") (formerly First National Bank of Shreveport) and Benjamin Vaughan ("Vaughan"), moved to dismiss the claims on the basis of res judicata, prescription, or equitable or judicial estoppel. The Howes, in turn, moved to abstain and remand, arguing that their claims concerned issues of evolving state law better left to the state courts. The bankruptcy court granted Premier's motion to dismiss and recommended the denial of the motion to abstain and remand. The district court affirmed the dismissal and adopted the recommendation. The Howes also sought to dismiss their Chapter 11 action and proceed under Chapter 12, but the bankruptcy court refused to dismiss the Chapter 11 case. The district court affirmed.

After the Howes first instituted Chapter 11 proceedings, Premier filed a proof of claim on two promissory notes executed in 1980 totalling $2,122,622.20. The notes were secured by a collateral mortgage covering 1,200 acres of the Howes' farm and dairy operations and a chattel mortgage on their house, farm equipment and cattle. The Howes responded by filing a complaint seeking, for various reasons, to have the chattel mortgage declared null and void and contending that the rate of interest charged by Premier was usurious. As a condition for Premier's loan to the Howes in 1980, the Howes' hired Vaughan as a consultant for their dairy operation at

$1,000.00 per month. In the reorganization proceedings, the Howes filed an application to reject Vaughan's management contract as an executory contract that overcharged for management services. Premier opposed this application and, following a hearing, the parties entered into a stipulated order whereby Vaughan would continue in a lesser management role and at a reduced compensation level.

On June 18, 1982, the Howes filed their disclosure statement and initial plan of reorganization. Premier filed objections to the disclosure statement and plan and also filed a motion to dismiss the reorganization proceedings as unfeasible. The Howes filed a second and a third disclosure statement and plan. Premier withdrew its objections and its motion to dismiss "subject to settlement and agreement." The parties negotiated and settled on a Fourth Amended Plan of Reorganization and Disclosure Statement, dated January 17, 1983. The Howes' lender liability claims that are the subject of this appeal were not scheduled as an asset of the estate, nor were they disclosed or treated in the Fourth Amended Plan of Reorganization and Disclosure Statement. The bankruptcy court confirmed this plan on January 28, 1983.

The plan specifically treated the Howes' indebtedness to Premier as an allowed claim, partially secured and partially unsecured. Pursuant to the plan, the Howes executed a *dation en paiement* (giving in payment) providing that 601 acres of the Howes' dairy farm would be transferred to Premier in satisfaction of a portion of the Howes' indebtedness. The plan treated a portion of the remaining indebtedness as a secured claim with mortgages encumbering dairy cattle, farm equipment and certain real estate. The Howes were to pay this indebtedness over a 20 year period. The plan treated the remainder of the indebtedness to Premier as an unsecured claim. The plan also contained a liquidation provision should the Howes fail to comply with the plan. This provision allowed for a release of a deed held in escrow covering the dairy cattle, farm equipment and real estate to Premier. Finally, the Howes, as debtors-in-possession, reserved the right to

prosecute "any claims or causes of action" which existed in their favor and that were not previously litigated to a final judgment. The question of whether the Howes' lender liability claims against Premier in the present action were previously litigated to a final judgment constitutes the principal issue on appeal.

The Howes made monthly payments to Premier in accordance with the plan until September 1988. Approximately five years after confirmation of the plan, the Howes brought this lender liability action based on the 1980 loan transaction. They claim that Premier, Vaughan and others induced the Howes to incur substantial indebtedness without regard to their ability to repay the borrowed sum. The aim, according to the Howes, was to drive the Howes into financial ruin so that the defendants could obtain a certain tract of the Howes' land for commercial development. They also alleged that Premier requested, as a condition for the loan, that the Howes hire Vaughan as a consultant, and that Vaughan thereafter took total control of their operations. The Howes claimed violations of fiduciary and contractual duties, Louisiana securities laws, and state law fraud. Damages were sought in the amount of $14,250,000.00. The defendants removed to federal court. The district court referred the matter to the bankruptcy court and, as noted above, the bankruptcy court dismissed the claim as barred by res judicata.

In October through December of 1988, the Howes failed to make monthly payments to Premier in accordance with the reorganization plan. The Howes also filed a petition for Chapter 12 relief in the bankruptcy court. In response, and due to the failure of the Howes to make payments, Premier requested, pursuant to the terms of the plan's liquidation provision, that the deed held in escrow be released to Premier. The Howes then moved to dismiss their Chapter 11 proceedings. The bankruptcy court denied the Howes' motion to dismiss their Chapter 11 proceedings and granted Premier's motion for release of deed.

The Howes raise three issues on appeal. In the first consolidated case, the Howes contend that the district court erred in failing to abstain under either the mandatory or permissive abstention provisions of 28 U.S.C. § 1334. They also contend that the courts below erred in concluding that their lender liability claims were barred by res judicata. As to the second consolidated case, the Howes contend that the bankruptcy and district courts erred in failing to permit the Howes to dismiss their Chapter 11 proceedings and continue under Chapter 12.

## II. Abstention.

Premier and Vaughan removed the Howes' state court proceedings pursuant to 28 U.S.C. § 1452, based on allegations that the state court action was a civil proceeding arising in or related to a bankruptcy case. The bankruptcy court's "Reasons for Decision and Report and Recommendation" concluded that the district court should not abstain. The court set out two reasons for its conclusion. First, because res judicata was at issue, it noted "the close nexus between this matter and prior orders of the ... Bankruptcy Court." Second, the court concluded that the matter was a core proceeding. The district court agreed with the bankruptcy court and denied the motion to abstain and remand.[1]

### A. Mandatory Abstention.

In response to Premier's motion to dismiss the Howes' lender liability claims,

the Howes filed a motion to abstain and remand, urging the district court to abstain on the grounds set forth in 28 U.S.C. § 1334(c)(2). That section provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a Court of the United States absent jurisdiction under this Section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.[2]

In other words, a district court must abstain from hearing a non-core, related matter if the action can be timely adjudicated in state court. The Howes argue that their action is a non-core, related proceeding at least in regard to those defendants who did not file a proof of claim in the original bankruptcy. We need not address the merits of the Howes' mandatory abstention argument, however, because the provisions of § 1334(c)(2) do not apply to them. The 1984 Act states that its mandatory abstention provisions do not apply to cases pending on July 10, 1984, its date of enactment, or to proceedings arising in or related to such cases.[3] Because their action was pending on the date of the stat-

---

1. Bankruptcy Rule 5011 provides that "[u]nless the district judge orders otherwise, a motion for abstention pursuant to 28 U.S.C. § 1334(c) shall be heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion." Rule 9033(d) provides the district court's standard of review. "The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." *Id.*

 On appeal, a bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, but its conclusions of law are freely

reviewable. *Matter of Multiponics, Inc.,* 622 F.2d 709, 713 (5th Cir.1980); *In the Matter of Waller Creek, Ltd.,* 867 F.2d 228, 232 (5th Cir. 1989).

2. 28 U.S.C. § 1334(c)(2).

3. The statute states:
 Section 1334(c)(2) of Title 28, United States Code, and Section 1411(a) of Title 28, United States Code, as added by this Act, shall not apply with respect to cases under Title 11 of the United States Code that are pending on the date of enactment of this Act, or to proceedings arising in or related to such cases. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353 § 122(b). *See also In re Adams,* 809 F.2d 1187 (5th Cir.1987); *Carlton v. BAWW, Inc.,* 751 F.2d 781, n. 6 (5th Cir.1985).

ute's enactment, the statute's mandatory abstention provisions do not apply to them.

## B. Permissive Abstention.

■ The Howes also assert that the district court should have abstained under the *doctrine of permissive abstention.*[4] The Howes argue that, because there is a "paucity" of Louisiana jurisprudence on their lender liability cause of action, the federal court should show "due respect" to the Louisiana courts and allow them to develop this area of the law. The Howes argue that the district court erred in failing to abstain from exercising jurisdiction over the defendants who did not file a proof of claim in the original bankruptcy proceeding. Therefore the district court also erred by failing to exercise permissive abstention over the other defendants.[5] Finally, the Howes assert principles of comity and judicial convenience.

Premier and Vaughan contend that, because the central issue in this litigation is the necessity of the federal court's protection of its own judgment, permissive abstention should not apply. Additionally, because the subject matter of the claims had been thoroughly contested in an adversarial context during the bankruptcy proceedings, Premier and Vaughan contend that federal court was the appropriate fo-

rum in which to determine the merits of the Howes' claims.

We do not gainsay the importance of state courts deciding state law issues. The decision to grant permissive abstention, however, lies within the discretion of the district court and we will not reverse that decision unless the district court clearly abused its discretion.[6] Premier was the chief creditor in the Howes' Chapter 11 bankruptcy proceedings, and Premier's and Vaughan's claims were the only significant contested issues in those proceedings. Because of the close nexus between the bankruptcy court's earlier proceedings and the Howes' present action, we cannot find that the district court clearly abused its discretion by failing to abstain.

## III. Res Judicata.

■ The Howes contend that the district court erred in affirming the bankruptcy court's dismissal of their state law claims on res judicata grounds. The law in this circuit is well settled that a plan is binding upon all parties once it is confirmed and all questions that could have been raised *pertaining to such plan* are res judicata.[7] This circuit's test for res judicata requires that:

(1) The parties be identical in both suits,

---

**4.** 28 U.S.C. § 1334(c)(1). The subsection provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

**5.** The Howes argue that if some of the defendants were remanded to state court but not others, the Howes' cause of action would be fragmented and they could be subjected to inconsistent judgments. We do not address the merits of this argument because, as noted above, the mandatory abstention provisions do not apply to the Howes.

**6.** 28 U.S.C. § 1334(c)(1) grants the district court the discretion to abstain from hearing a matter related to the bankruptcy "in the interest of justice, or in the interest of comity with State courts or respect for State law...." 28 U.S.C. § 1334(c)(1). In reviewing an appeal from a matter within the district court's discretion, this

court will affirm unless the district court clearly abused its discretion. *Lama Drilling Co. v. Latham Exploration,* 832 F.2d 1391 (5th Cir.1987); *Matter of Braniff Airways, Inc.,* 774 F.2d 1303, 1305 (5th Cir.1985). *See also, Christensen v. Tucson Estates,* 912 F.2d 1162 (9th Cir.1990) (discussing permissive abstention and finding that the district court abused its discretion on the facts of the case); *In re White Motor Credit,* 761 F.2d 270 (6th Cir.1985) (finding that the district court did not abuse its discretion by exercising permissive abstention).

**7.** *See* 5 L. King, *Collier on Bankruptcy* 1141.01, at 1141–5 (15th ed. 1983); *see also Miller v. Meinhard–Commercial Corp.,* 462 F.2d 358, 360 (5th Cir.1972); *In re Constructors of Florida, Inc.,* 349 F.2d 595, 599 (5th Cir.1965). The *In re Constructors* court states that "[a]n arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court [citation omitted], and any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine of *res judicata.*" [Emphasis in original].

(2) A court of competent jurisdiction rendered the prior judgment,

(3) There was a final judgment on the merits in the previous decision, and

(4) The plaintiff raises the same cause of action or claim in both suits.[8]

The Howes concede that the first three elements of the test are met. They contend, however, that their claim does not involve the same cause of action as the earlier bankruptcy proceeding because "there was not an order in the bankruptcy proceeding ... specifically addressing the relationship which existed by and among" the parties.

### A. Was It the Same Claim?

The *Nilsen* court adopted for the Fifth Circuit the transactional test of the *Restatement (Second) of Judgments* for determining whether two suits involve the same claim for res judicata purposes.[9] Under this approach, the critical issue is not the relief requested or the theory asserted but whether plaintiff bases the two actions on the same nucleus of operative facts.[10] The rule is that res judicata "bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication, ... not merely those that were adjudicated."[11]

The seminal case in this circuit on the res judicata affect of a confirmation order is *Southmark Properties v. Charles House Corp.*[12] In *Southmark*, we held that a district court's order confirming a trustee's sale of Southmark's property barred the debtor's later claim that the creditor engaged in fraudulent and extortionate activities leading to that sale.[13]

Southmark claimed that the creditor's improper activities concerning its construction loan caused it to default and led to the creditor's foreclosure action. The foreclosure action, in turn, led to Southmark's bankruptcy filing and, finally, to the trustee's sale of the property.[14] The court noted that a common nucleus of operative facts informed the district court's order approving the reorganization sale and the debtor's subsequent claim that the creditor's activities caused that sale. The central transaction in both instances, the court reasoned, was the passing of title to the property in exchange for the cancellation of the mortgage debt.[15]

The Howes argue that, unlike the debtor in *Southmark*, their action does not meet the transactional test because "[t]he only right and duty resolved in the bankruptcy proceeding was the obligation of the Howes to make payments to the Bank [Premier] and Vaughan pursuant to the obligations incurred by them; there was no consideration of an obligation from the Bank [Premier], Vaughan or Loyd to the Howes." We do not agree.

The loan transaction at the heart of the present litigation was also the source of Premier's claim against the estate. The Howes vigorously contested the validity of Premier's lien in adversary proceedings in the bankruptcy court and contended that Premier's loan was usurious. Premier's loan was the only major claim against the estate and was the subject of extensive negotiations prior to confirmation of the plan of reorganization. We cannot escape the conclusion that the Howes' present allegations merely assert new theories based

---

**8.** *Nilsen v. City of Moss Point,* 701 F.2d 556, 559 (5th Cir.1983) (en banc); *Latham v. Wells Fargo Bank, N.A.,* 896 F.2d 979, 983 (5th Cir.1990).

**9.** *Nilsen,* 701 F.2d at 560.

**10.** Under the transactional test, the same action for res judicata purposes includes "all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction (or series of connected transactions)". *Nilsen,* 701 F.2d at 560, n. 4. A party may not avoid the preclusive affect of res judicata by asserting a new theory or a different remedy. The nucleus of facts defines the claim rather than the legal

theory posed or recovery sought. *See, Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1124–25 (5th Cir.1987).

**11.** *Nilsen,* 701 F.2d at 560 (emphasis in original).

**12.** 742 F.2d 862 (5th Cir.1984).

**13.** *Id.* at 872.

**14.** *Id.*

**15.** *Id.* at 871.

on the same nucleus of operative facts that informed their earlier bankruptcy proceedings. The two actions, therefore, constitute the same claim or cause of action for res judicata purposes.

### B. Could The Action Have Been Brought in the Earlier Proceedings?

█] The four factors listed by the *Nilsen* court do not conclude the question of whether res judicata bars the Howes' claims, however. Even if the two actions are the same under the transactional test, res judicata does not bar the instant action unless the Howes could and should have brought their claims in the former proceedings.[16]

In *D–1 Enterprises v. Commercial State Bank*,[17] this court noted the important procedural differences between the 1898 Bankruptcy Act, under which *Southmark* was decided, and the new Bankruptcy Code.[18] Under Rule 701(6) of the Bankruptcy Rules applicable to Chapter X cases under the Act, a proceeding to obtain relief from a stay was an adversary proceeding and was governed by Part VII of the Bankruptcy Rules.[19] Rule 713 provided that if the trustee or receiver was the defendant, the trustee or receiver had to assert any compulsory counterclaims unless the failure to assert the counterclaim arose through oversight, inadvertence, excusable neglect, or when justice required.[20] Under the Code, however, a hearing on relief from stay is a contested matter; and, as the *D–1 Enterprises* court noted, "[c]ounterclaims are compulsory only in 'adversary proceedings.'"[21] Under the "quick motion-and-hearing style" of contested matters, the court reasoned, a party may not be required, or even allowed, to bring all of his claims.[22]

The specific issue that the *D–1 Enterprises* court considered was whether an agreed order lifting a stay and abandoning certain assets of the debtor to a creditor, entered in a "contested" hearing on relief from stay, was res judicata of various tort claims against that creditor for bad faith acceleration of a note, wrongful foreclosure and the like; and if not, whether these claims were compulsory counterclaims to the creditor's motion to lift the stay. The court held that it was not. In a Chapter X proceeding, the court observed, the debtor could assert a claim against the creditor, even on a largely unrelated matter, as an affirmative defense to the creditor's efforts to foreclose. The Code, however, provides an expedited procedure for obtaining relief from the automatic stay.

---

**16.** *See Southmark* at 871 (citing *Nilsen* at 562–63) ("Because appellants' present claim and the prior judgment involved the same principal transaction, appellants' claim is barred by *res judicata,* if the procedural system available to appellants in the reorganization proceedings permitted appellants to raise that claim in those proceedings.") (emphasis in original); *D–1 Enterprises, Inc. v. Commercial State Bank,* 864 F.2d 36, 38 (5th Cir.1989) ("Essential to the application of the doctrine of res judicata is the principle that the previously unlitigated claim could or should have been brought in the earlier litigation.").

**17.** 864 F.2d 36, 38 (5th Cir.1989).

**18.** *Miller v. Meinhard–Commercial Corporation,* 462 F.2d 358 (5th Cir.1972), also gives broad preclusive effect to bankruptcy court orders under the 1898 Act. In *Miller,* an unsecured creditor in a Chapter XI case under the Bankruptcy Act brought an action against a secured creditor nine months after confirmation of a reorganization plan, alleging that the secured creditor made fraudulent remarks at a creditor's meeting and that those remarks (a promise to loan the debtor additional funds) induced the unsecured creditor to refrain from attempting to shift the proceedings to a reorganization under Chapter X of the Bankruptcy Act. The *Miller* court reasoned that "[a]n arrangement confirmed by a bankruptcy court has the effect of a judgment by a district court … and any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine of *res judicata.*" *Id.* at 360 (citation omitted) (emphasis in the original).

**19.** 13 J. Moore, *Collier on Bankruptcy* at ¶ 701.09, at 7–34—7–35 (14th ed. 1977).

**20.** *Id.* at ¶ 713.03, at 7–205.

**21.** *D–1 Enterprises, Inc. v. Commercial State Bank,* 864 F.2d 36, 39 (5th Cir.1989). The court observed that under the Code "[t]here are two basic forms of adversary process within a bankruptcy case: 'contested matters' and 'adversary proceedings.' …" *Id.*

**22.** *Id.*

The court noted that "[t]he legislative history of § 362(e) [of the Code] makes clear that counterclaims against a creditor seeking to lift the stay on largely unrelated matters are not to be handled in the summary fashion required by the expedited nature of the proceeding."[23] The court further noted that "[c]onsistent with the legislative history, the courts have held that 'indirect defenses,' such as breach of contract, fraud and the like, would be severed from the expedited stay litigation if raised in an effort to defeat the creditor's motion."[24]

This court's decision in *D–1 Enterprises* is not a broad retrenchment from *Southmark* as the Howes claim; rather, it applies the same well established principles of res judicata to the changed nature of pro-

ceedings under the Bankruptcy Code. The *D–1 Enterprises* court merely decided that when a claim cannot be litigated effectively, it is not precluded.[25]

■ Applying the principles of res judicata in the bankruptcy context which we have set forth, we note that the Howes disclosed and specifically treated Premier in their confirmed plan, and Premier was their only significant creditor.[26] Premier, Vaughan and the Howes in the instant case were diametrically opposed from the inception of the reorganization proceedings, and the Howes had, and took full advantage of, the "right to be heard in the reorganization proceedings."[27] The Howes instituted adversary proceedings[28] against Premier in which they contested the validity of Premier's lien and charged that the loan was

---

**23.** *Id.* at 38.

**24.** *Id.*

**25.** The decision in *Hendrick v. Avent*, 891 F.2d 583 (5th Cir.1990), petition for cert. filed (June 7, 1990, No. 89–1923), is also consistent with this line of cases. In *Hendrick*, the court gave res judicata effect to an order authorizing and confirming a sale of stock following an adversary proceeding. *Id.* at 584. Unlike the facts in *D–1 Enterprises*, the order in *Hendrick* followed an adversary proceeding and did not occur in the quick motion-and-hearing style of contested matters. *Id.* at 587. The court concluded "that appellant's later claims were inconsistent with the crux of the initial decision and he had the opportunity to effectively litigate his claim in the bankruptcy court.... The collateral attacks brought later are barred by res judicata." *Id.*

The Howes also rely on *In re Auto West, Inc.*, 43 B.R. 761 (D.C.Utah 1984). The court in *In re Auto West* held that a debtors' confirmed plan of reorganization did not bar employment of special counsel to pursue an undisclosed chose in action against a creditor who was not mentioned or treated in the confirmed plan. The court recognized that "[t]here is considerable authority for the proposition that the confirmation of a plan of reorganization is binding on all parties to the plan and all questions that could have been raised pertaining to the plan are res judicata." The court found, however, that this principle did not bar suit against a defendant neither disclosed or treated in the plan.

**26.** Curiously, the Howes do not rely on a provision of the plan in which the bankruptcy court retained jurisdiction to

[a]llow the debtors to enforce any claims or causes of action which exist in their favor as debtors in possession ... and which may not have previously been enforced by the debtors in possession or which may not have been prosecuted to final, unappealable judgment as of the date of confirmation....

Of course, the question of whether the present lender liability action should be treated as a part of a claim which, prior to confirmation, had been previously enforced by the Howes is the very issue we address.

**27.** *Southmark*, at 871. The *Southmark* court goes on to note that if Southmark committed fraudulent acts, as the debtors now claimed, the debtors "had ample opportunity to raise those facts as a defense to Southmark's claim.... Appellants [debtors] cannot now undo a judicial decree which they had a full opportunity to contest and chose not to do." *Id.* at 872.

**28.** We do not intimate that whether an adversary proceeding preceded a confirmation hearing is a litmus test for determining whether the action is barred by res judicata, nor do we intimate that whether a proceeding sought to be given res judicata effect is an adversary proceeding or a contested matter is such a litmus test. The critical question for res judicata purposes is whether the party could or should have asserted the claim in the earlier proceeding. Whether the proceeding was an adversary proceeding or contested matter, however, may be an important factor in determining if the claim could or should have been effectively litigated in the earlier proceeding. Other important factors may include the nexus between the plan and the claim being asserted and the amount of

usurious.[29] Every facet of Premier's loan was the subject of litigation and negotiation.[30] Under the circumstances, the Howes not only had the opportunity to bring the present claims against Premier but the obligation to do so.[31]

The Howes argue that they should be allowed to pursue their claims because, although they may have been aware of the basic facts underlying their claims, they were not aware of the significance of those facts. We find the Howes' ignorance an inadequate excuse for their failure to raise their claims in the earlier proceedings. They do not suggest that the facts forming the basis of those claims were undiscoverable until after those proceedings. Nor do they suggest that the adversary proceedings lacked the procedural mechanisms that would have allowed them to bring their claims.

The Howes argue that if we find their claims barred by res judicata we will, in effect, "hold that no debtor who has had a plan of reorganization confirmed can sub-

sequently raise an action against a creditor for any actions which occurred prior to the filing of the bankruptcy petition." We do not so hold. We decide only that when a confirmed plan discloses and specifically treats the creditor's claim, and the debtor has had a full opportunity to contest the creditor's claim in an adversary proceeding that is, in effect, settled in the plan, the debtor cannot collaterally attack the bankruptcy court's decision five years later in an action based on the same transaction.

### IV. Chapter 12.

■] In their second consolidated case, the Howes contend that they should be allowed to dismiss their previously confirmed and substantially consummated Chapter 11 case, and proceed under Chapter 12, which provides for emergency debt relief to family farmers. Chapter 12, enacted in 1986, specifically provides that Chapter 11 cases pending on the date it went into force may not be converted to Chapter 12.[32] The Howes maintain, how-

time that has elapsed since the case commenced.

**29.** Note that in *Hotel Corp. of South v. Rampart 920, Inc.*, 46 B.R. 758 (E.D.La.1985), the court found an action brought to recover damages from alleged violations of federal securities law, fraud in the bankruptcy proceedings, RICO, and strict liability and negligence under state law barred by res judicata because of prior adversary proceedings in bankruptcy based on same transaction.

**30.** Upon inquiry, we discovered that the Howes' original adversary proceeding against Premier was dismissed without prejudice. Under the circumstances obtaining here, however, we do not consider this fact dispositive of the res judicata question. The record reflects that the dismissal of the Howes' original adversary proceeding was pursuant to a negotiated agreement to allow Premier's claim in return for Premier dropping its objections to the plan. The plan specifically treated Premier's claim in the amount of $2,122,622.20, and included detailed provisions concerning the restructuring of the Howes' debt to Premier. Under the circumstances, the Howes had every opportunity to investigate and pursue any lender liability claims they may have had against Premier. The result might well have been different, we note, had Premier's claim not been specifically dealt with in the plan.

**31.** The Howes do not raise the issue of whether appellee Vaughan was the "same party" for pur-

poses of res judicata. We note that Vaughan was not named in the Howes' adversarial proceeding. He was treated in the plan, however, and was an active participant in the bankruptcy. Vaughan filed proofs of claims for sums due under his management contract, the debtors scheduled his claims as disputed, the debtors applied for authority to reject his management contract and later amended their pleadings to reflect Vaughan's claims as allowed. Vaughan also would appear to have been a privy of Premier in the Howes' adversarial proceeding. Premier had insisted on Vaughan's employment as manager of the Howes' farm as part of their agreement to advance funds to the Howes. If the Howes had brought their lender liability claims in the earlier proceedings, Vaughan presumably would have been an indispensable party under Bankruptcy Rule 7019. Vaughan was not merely a "formal or paper" party and therefore is protected by res judicata. *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir.1987); *Southmark*, 742 F.2d at 869–70; *Hotel Corp. of South v. Rampart 920, Inc.*, 46 B.R. 758, 764 (E.D.La.1985).

**32.** Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, § 302(c)(1), 100 Stat. 3088 (1986); *see also Matter of Sinclair*, 870 F.2d 1340, 1344 (7th Cir.1989).

Section 302(c)(1) explicitly provides that Chapter 11 cases pending on the effective date of

ever, that dismissal of their Chapter 11 proceedings pursuant to 11 U.S.C. § 1112(b) [33] and filing of their Chapter 12 proceedings, would not amount to a "conversion" of their Chapter 11 proceedings to a Chapter 12. The Howes claim two alternative theories for dismissal under section 1112(b). They first maintain that, because the section's grounds for dismissal are exemplary and not exhaustive, "their mere desire to dismiss this Chapter 11 proceeding in order to file a Chapter 12 case and thus take advantage of the emergency relief granted by Congress to family farmers is a sufficient basis for the granting of the motion to dismiss." Alternatively, the Howes contend that dismissal of their Chapter 11 proceeding was justified under section 1112(b)(8) by "the existence of a material default by the debtor with respect to the confirmed plan." The bankruptcy court rejected the Howes' arguments and the district court affirmed.

In *Matter of Sinclair*,[34] the Seventh Circuit held that dismissal of Chapter 11 proceedings based upon a desire to proceed under Chapter 12 is a de facto conversion prohibited by section 302(c)(1). The debtors, who owned a family farm, filed a bankruptcy petition in 1985 under Chapter 11. After Congress enacted Chapter 12 in 1986, the debtors requested that the bankruptcy court convert their case to Chapter 12.

The bankruptcy court declined and the district court affirmed. On appeal, the debtors argued that they should be allowed to convert or, in the alternative, they should be allowed to dismiss their Chapter 11 proceeding and begin again under Chapter 12. The court first rejected the debtors' arguments for outright conversion.[35] Turning to the debtors' contention that they should be allowed to dismiss their Chapter 11 and proceed under Chapter 12, the court swiftly recoiled:

> This is conversion by another name. Statutes control more than nomenclature; they are addressed to conduct. Proposals for conversion by another name are proposals for conversion. This one was properly rejected on the authority of § 302(c)(1).[36]

We agree with the Seventh Circuit that dismissal of a Chapter 11 proceeding based on a mere desire to proceed under Chapter 12 is, in reality, a de facto conversion prohibited by section 302(c)(1)—particularly where, as here, a Chapter 11 plan has been confirmed and substantially consummated.

 We turn then to the Howes' claim that the bankruptcy court's dismissal of their Chapter 11 proceeding was warranted because of a "material default by the debtor with respect to a confirmed plan"—the Howes' failure to make certain payments required by the reorganization plan.[37]

---

**33.** Section 1112(b) provides, in relevant part:

> Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
> \* \* \* \* \* \*
>
> (8) material default by the debtor with respect to a confirmed plan....

Chapter 12 cannot be converted to Chapter 12. The statutory language directly contradicts the legislative history. The Eighth Circuit, in *In re Erickson Partnership,* resolved a conflict among the bankruptcy courts and held that the statute must control. 856 F.2d 1068, 1070–71 (8th Cir. 1988). The Seventh Circuit later joined the Eighth Circuit in concluding that pending Chapter 11 cases cannot be converted to Chapter 12. *Matter of Sinclair,* 870 F.2d 1340, 1344 (7th Cir.1989). No other circuit, including ours, has ruled on the issue; but since these two cases were decided, no court has permitted outright conversion of a pending Chapter 11 case. We agree with these decisions because, in our view, the statute is completely unambiguous.

**34.** 870 F.2d at 1345.

**35.** *Id.* at 1341–45.

**36.** *Id.* at 1345. *See also In re Olson,* 102 B.R. 147 (Bankr.C.D.Ill.1989).

**37.** As *Matter of Sinclair* makes clear, dismissal of a Chapter 11 case for no other reason than a desire to proceed under Chapter 12 is a de facto conversion prohibited by the Bankruptcy Code. This does not mean, however, that a debtor is prohibited from dismissing a Chapter 11 case for a *legitimate* reason where the debtor might later attempt to proceed under Chapter 12. *See In re Dennis,* 90 B.R. 607, 607 (W.D.N.Y.1988) ("Section 302(c) does not prohibit the dismissal of a Chapter 11 petition merely because a debtor might later attempt to file under Chapter

However, the confirmed plan of reorganization specifically provides:

> In the event that [the Howes] should fail to comply with any of the provisions of this plan dealing with payments to any of the classes of creditors set forth above, upon application of either [the Howes], [Premier] or any creditor in the class which has not been paid in accordance with the terms of the plan, the Court shall enter an order executing the Deed in favor of [Premier] and converting this plan to one of liquidation.

The bankruptcy court found that because the plan contained "built-in provisions that eliminate default," there was no material default of the plan necessitating dismissal of the Chapter 11 proceedings:

> It is a bulletproof plan. It has built-in provisions that eliminate default. There are no defaults that can occur. If you can't pay, then the debt is paid by a dation. That was negotiated by the parties.... [T]he plan that was confirmed before Judge Smallenburger in January of 1983, provided for every eventuality, so there is no material default of the plan.

We agree with the bankruptcy court that the instant reorganization plan provided an alternative remedy upon nonpayment to Premier which sheltered the Chapter 11 proceedings from dismissal for material default of the plan.[38] Therefore, we conclude, as did the bankruptcy and district courts, that the Howes' Chapter 11 proceedings should not be dismissed.

*V. Conclusion.*

Based on the foregoing reasons, we AFFIRM the judgments in case number 89–4548 and case number 89–4513.

---

12."). Thus, courts have permitted good-faith dismissal of Chapter 11 proceedings for reasons recognized under the Bankruptcy Code even if dismissal allows the debtor to then proceed under Chapter 12. *See, e.g., In re Ryder,* 75 B.R. 890, 891–93 (Bankr.W.D.La.1987) (involuntary dismissal of Chapter 11 proceeding where conduct of debtor not "willful").

**38.** *See In re Kelley,* 53 B.R. 961, 962 (Bankr.W.D. Ky.1985) ("A reorganization plan which expressly provides for certain remedies upon default may close the door to the traditional creditor's remedy of dismissal of a Chapter 11 case for a default of that same type.").

We note that, in the instant case, the provision in the confirmed plan for release of deed to Premier was triggered by a failure to make payments to Premier. The plan provided, however, that the release of deed to Premier would be triggered by the failure of the Howes to make payments to *any* creditor. We express no opinion about the result if the latter event had occurred.