In re The **AMERICAN BASKETBALL LEAGUE, INC.**, a California corporation, Debtor.

**Uecker & Associates, Inc., Plan Administrator, Plaintiff,**

v.

**L.G. Hunt & Associates, Inc, a Georgia Corporation, Larry B. Hunt, and the United States of America, Defendants.**

Bankruptcy No. 98–60354–MM.
Adversary No. 00–5216.

United States Bankruptcy Court,
N.D. California.

Oct. 13, 2004.

Andrea T. Porter, Foley & Lardner LLP, San Francisco, CA, for Plaintiff.

Richard A. Rogan, Jeffer, Mangels, Butler and Marmaro, Stephen L. Johnson, Office of United States Trustee, San Francisco, CA, for Defendants.

## OPINION

MARILYN MORGAN, Bankruptcy Judge.

### INTRODUCTION

In this adversary proceeding, Uecker & Associates, Inc., the debtor's plan administrator, asserts its avoidance powers to recover over one million dollars in pre-petition payments that the American Basketball League made to reacquire its stock. The United States received the bulk of these payments in connection with ongoing forfeiture proceedings. The government requests summary judgment in its favor because the estate's interest in the forfeited funds cannot be pursued outside of the already concluded forfeiture proceedings.

For the reasons set forth below, the United States' motion for summary judgment is granted.

### PROCEDURE ON SUMMARY JUDGMENT

Summary judgment obviates the need for trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions and declarations that are part of the record. Fed. R.Civ.P. 56, Notes of Advisory Committee on Rules. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the same evidentiary tools to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the non-moving party's evidence is to be believed and all reasonable inferences from the facts must be viewed in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### BACKGROUND

#### I. Facts

The American Basketball League was a women's professional basketball league founded in 1995. During the league's first years, an investor named Bobby Johnson paid $1.5 million to purchase shares of ABL Series A-1 preferred stock. Over time, Johnson transferred all of his shares

to L.G. Hunt & Associates, Inc., a corporation owned and controlled by Larry G. Hunt (collectively "Hunt"), without obtaining the ABL's approval of the transfers.

In the fall of 1996, the United States began investigating Johnson and Hunt for Medicaid fraud. The ABL learned of the investigation in early November when it received a subpoena to search the ABL's offices for evidence of Johnson and Hunt's criminal activity. The government informed the ABL that the stock originally issued to Johnson but transferred to Hunt might be subject to forfeiture as proceeds of unlawful activity. In light of both the government's criminal investigation and the unauthorized transfer of stock from Johnson to Hunt, the ABL decided to take steps to reacquire its stock from Hunt. In June 1997, it filed a state court action against Johnson and Hunt to resolve the dispute over ownership of the stock.

On September 12, 1997, the United States filed a civil forfeiture action in the United States District Court for the Northern District of Georgia that named Hunt's ABL stock as a defendant, along with various other assets. The government alleged that the ABL stock was forfeitable because either Johnson or Hunt acquired the stock using funds wrongfully obtained from the Medicaid system. Within a week, the United States also commenced a parallel criminal proceeding against Hunt and Johnson. The criminal indictment alleged that Hunt and Johnson had engaged in Medicaid fraud, money laundering and mail fraud and also requested forfeiture of Hunt's assets, including the ABL stock.

With the initiation of the forfeiture actions, the ABL and some of its other investors became increasingly concerned that Johnson and Hunt's continued involvement in the ABL would negatively affect its ability to attract new investors. They were also troubled by the possibility that Hunt's ABL stock, which the ABL had been trying to reacquire, would pass to the government and ultimately be sold at a public auction. Both to resolve the claims of stock ownership at issue in the state court litigation and to avoid the potential adverse consequences of a public auction, the ABL negotiated and entered into a Stock Repurchase and Settlement Agreement dated September 18, 1997 with Johnson and Hunt.

Under the settlement agreement, the ABL and one of its existing investors agreed to repurchase all of the ABL stock held by Hunt for $3.5 million. The purchasers paid $700,000 cash at closing. However, only $100,000 was paid directly to Hunt. The remaining $600,000 was paid according to written instructions presented by Hunt. In addition to the cash payment, the ABL executed two promissory notes in favor of Hunt, or its assigns. The first note was in the amount of $1.5 million. It required the ABL to make monthly installment payments of $100,000, of which $10,000 would be paid directly to Hunt with the remaining $90,000 to be paid as specified in an instruction letter signed jointly by Hunt and the United States.

Because Hunt's ABL stock, as a defendant in the forfeiture actions, was in the possession of the United States Marshal Service, the parties could not effectuate the stock sale without the government's consent. To obtain the necessary consent, on December 12, 1997, Hunt entered into a second agreement with the United States, entitled Stipulation for Sale of Stock. The stipulation provided that the United States consented to the sale but, in exchange for the stock, it would receive $600,000 of the initial cash payment and $90,000 of each installment paid under the first note. The stipulation further stated that

It is in the best interests of all concerned to seek approval of the Court to sell the subject ABL stock in accordance with the above-mentioned Stock Purchase and Sale Agreement and to accept the proceeds of the sale as a substitute res in the civil forfeiture action and to acknowledge that the sales proceeds ... are subject to forfeiture to the same degree and extent as the ABL stock that was listed as a defendant in Civil Action No. 1:97–Cv–2682–JTC and as a forfeitable asset in Criminal Indictment No. 1:97–Cr–426.

On February 17, 1998, the district court, as part of the civil forfeiture proceeding, entered an order authorizing the sale of the stock pursuant to the parties' agreements. The order approved the sale and declared the proceeds from the sale to be "the substitute res for the defendant stock."

Following court approval, the sale transaction between the ABL and Hunt closed. Between March 3, 1998 and September 14, 1998, the ABL made payments pursuant to the settlement agreement as modified by the Stipulation for Sale of Stock and regained title to its stock. The United States received a total of $1,230,000 from the ABL and deposited the funds into a "seized asset account" pending further order of the district court. Thereafter, on December 28, 1998, Hunt pled guilty to the crimes alleged in the indictment against him. Pursuant to the negotiated plea agreement, he consented to the forfeiture of his assets, specifically including the *proceeds* of the ABL stock sale.

Three days later, on December 31, 1998, the ABL filed a chapter 11 petition, having succumbed to operational, competitive and financial difficulties. In February 1999, the ABL retained Uecker & Associates, Inc. to act as liquidating agent, and Uecker began to work investigating and disposing of the ABL's assets.

On March 22, 1999, the district court entered a Consent Decree of Forfeiture based on Hunt's guilty plea in the criminal case against him. The consent decree directed the United States Marshal to retain custody of the seized assets, including the proceeds from the sale of the ABL stock, and to publish notice as required by 21 U.S.C. § 853 to advise third parties of their right to file claims of any alleged interest in the assets to be forfeited and of the statutory deadline for filing any such claim. The required three week publication process began on April 8, 1999.

On the day before the publication process began, the ABL, as debtor in possession, filed an application to approve the retention of Uecker as liquidating agent. The application identifies an avoidance action against the United States as one of the ABL's principal assets. In a June 29, 1999 status report, Uecker noted that it had received documents concerning the potential preference claim against the United States but indicated that it planned to wait to pursue the claim within the structure of a plan of reorganization. Neither the ABL nor Uecker ever filed or attempted to file a third party claim of interest in the proceeds from the sale of the ABL stock in the forfeiture proceedings before the district court.

Almost a year later, the district court concluded the criminal forfeiture proceedings by entering a Final Order of Forfeiture on March 10, 2000. The Final Order acknowledges that two persons filed third party claims to the seized property and that the United States and the third party claimants had resolved their competing interests. Pursuant to the terms of the Final Order, the proceeds the United States received in connection with Hunt's sale of ABL stock, along with other assets, were forfeited to the United States.

On March 14, 2000, this court confirmed the ABL's plan of reorganization that established procedures for Uecker, as plan administrator, to wind up the affairs of the corporation and provide for an orderly liquidation. On June 30, 2000, Uecker commenced this adversary proceeding against defendants Hunt and the United States to avoid the reacquisition of the ABL stock pursuant to 11 U.S.C. §§ 544, 547, 548 and California law, seeking recovery of the purchase price pursuant to 11 U.S.C. § 550.

## II. The Legal Framework for Criminal Forfeiture Proceedings

The government conducted the forfeiture proceedings at issue in this case pursuant to a statute authorizing the government to seek forfeiture of a criminal defendant's assets to the extent that the assets are associated with or derived from criminal activity. 21 U.S.C. § 853(a). After a defendant pleads guilty or is convicted of the alleged crime, the forfeiture process occurs in two stages.

In the first stage, the court enters a preliminary order of forfeiture. *Id.* The preliminary order determines that the specific property covered by the order constitutes a forfeitable asset and extinguishes the criminal defendant's interest in the property. But, the government may not take title to the forfeitable property until the second stage, known as the ancillary proceedings, is completed. *See Id.* at § 853(n). The ancillary proceedings offer due process protections to innocent third parties that may have an interest in the forfeitable property by providing a forum to adjudicate the validity of their interest.

The requirements for ancillary proceedings are set forth in 21 U.S.C. § 853(n). The government must publish notice of the preliminary order, the government's intent to liquidate the forfeitable assets, and the right of third parties to file claims of interest in the forfeitable assets. *Id.* at § 853(n)(1). Although not required, the government may also provide direct written notice to any third party known to have an alleged interest in the property. *Id.* Within a specified time following receipt of notice by publication or otherwise, any third party asserting a legal interest in the forfeitable property may petition the court for a hearing to adjudicate the validity of the third party's interest. *Id.* at § 853(n)(2). If, after a hearing, the court determines that the third party petitioner had superior title to the property at the time of the "commission of the acts which gave rise to the forfeiture of the property" or is a bona fide purchaser of the property for value who was without cause to believe that the property was subject to forfeiture, the court must amend the forfeiture order to account for that party's interest. *Id.* at § 853(n)(6).

Once the court disposes of all the third party petitions or the time for filing third-party claims has passed, the government "shall have clear title to the property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee." *Id.* at § 853(n)(7). The court gives effect to this statutory mandate by entering a final order of forfeiture. With the entry of this final order all right, title and interest in the forfeited property vests in the United States and relates back to the time of the act giving rise to forfeiture of the property. *Id.* at § 853(c).

### CONTENTIONS OF THE PARTIES

The government contends that the plan administrator cannot assert the estate's interest in the proceeds of the ABL stock outside the statutory confines of the forfeiture proceedings that were conducted in the district court. Further, the asserted avoidance claims are a collateral attack on

the Final Order of Forfeiture which gave the United States clear and indefeasible title to the proceeds of the stock sale. As a result, this court is without power to set aside the district court's order. The government also asserts that the avoidance claims are barred by the doctrine of res judicata because the Final Order of Forfeiture is a final judgment on the merits of those claims. Finally, the government contends that the plaintiff cannot succeed on its fraudulent conveyance claim because the district court determined that the ABL received reasonably equivalent value for the reacquisition of its stock.

The plan administrator responds that it was not required to bring its avoidance action as part of the forfeiture proceedings because the debtor was an innocent third party with no interest or defense to assert in the forfeiture action. In other words, it was Hunt's property, not the debtor's, that was the target of those proceedings. The plan administrator further asserts that the avoidance claims survive because they are separate and distinct from the two categories of third party interests that serve as defenses to forfeiture. The plan administrator is willing to concede that the ABL *stock* was properly forfeited to the United States but urges that it is entitled to recover the proceeds because the ABL paid too much for the properly forfeited stock. The plan administrator also responds that the February 17, 1998 order approving the stipulation to sell the stock to the ABL made no findings that would preclude this court from determining whether the debtor received less than reasonably equivalent value when it reacquired the stock. Finally, the plan administrator asserts that res judicata does not apply because there was no full and fair opportunity to litigate her § 548 claim in the forfeiture proceeding. Uecker also argues that there was no identity of claims because the issue in the § 548 claim is simply whether the ABL

paid too much for properly seized and forfeited stock.

*LEGAL DISCUSSION*

### I. The Avoidance Claims Are an Improper Collateral Attack on the Judgment of Forfeiture.

 In February 1998, pursuant to a court-approved interlocutory sale, the ABL stock sale proceeds replaced the ABL stock as the res subject to forfeiture in the proceedings before the United States District Court for the Northern District of Georgia. Before entering its final order of forfeiture, the district court conducted ancillary proceedings to resolve all competing claims of interest in the proceeds. 21 U.S.C. § 853(n)(6). In this way, upon entry of the final order, the United States secured the right to warrant good title to the proceeds as against the world. *Id.* at § 853(n)(7). As a final judgment concluding the proceedings before the district court, the final order of forfeiture is entitled to full faith and credit in this court. Final orders, of forfeiture or other relief, are not subject to collateral attack. *Roberts v. United States,* 141 F.3d 1468, 1471 (11th Cir.1998); *Meincke v. United States,* 14 Cl.Ct. 383, 386 (1988); *Burlington Data Processing, Inc. v. Automated Medical Systems, Inc.,* 492 F.Supp. 821, 822 (D.Vt.1980).

For example, in *Vereda, Ltda. v. United States,* 271 F.3d 1367 (Fed.Cir.2001), the federal circuit found that the Federal Court of Claims could not entertain a takings claim that collaterally attacked a forfeiture proceeding. There, a mortgagee of an aircraft subject to administrative forfeiture failed to file a timely claim of its lien interest in the forfeiture proceedings. As a result, the mortgagee's interest was extinguished when the forfeiture was completed. When the mortgagee's lien went unpaid, the mortgagee filed suit in the

Court of Federal Claims alleging that the forfeiture operated as an unconstitutional taking of the mortgagee's interest. On appeal from the claims court's denial of a government motion to dismiss, the federal circuit reversed. Recognizing that administrative forfeiture has the same force and effect as a district court's final order of forfeiture in a judicial forfeiture proceeding, the circuit court concluded that the Court of Federal Claims did not have authority to entertain a takings claim that would require the court to scrutinize the actions of another tribunal. *Id.* at 1375. In other words, the Court of Federal Claims had no right to determine whether the airplane was correctly forfeited, including the forfeiture of the mortgagee's third party lien interest. *Id.* at 1374–75.

■ Unlike a direct appeal, a collateral attack questions the validity of a judgment or order in a separate proceeding that is not intended to obtain relief from the judgment. 18 Moore's Federal Practice, § 131.02[2]. It seeks, through the second suit, to avoid or evade the earlier judgment, or to deny its force and effect. Even where the second action has an independent purpose and contemplates some other relief, it is a collateral attack if, in some fashion, it would overrule a previous judgment. *Meinhard–Commercial Corp.*, 462 F.2d 358, 360 (5th Cir.1972). Thus, to determine whether Uecker's lawsuit here mounts an improper collateral attack, the court must consider both the scope of the district court's final order of forfeiture and the relief sought in the complaint.

■ Contrary to Uecker's arguments, the scope of the final order of forfeiture is not limited to a determination that Hunt's assets were properly seized. The district court entered its final order after conducting ancillary proceedings where third parties, like Uecker, were given an opportunity assert claims of interest in the proceeds

of the ABL stock sale. These ancillary proceedings, similar to quiet title proceedings, adjudicated the validity of the claimed interests and extinguished interests that were not pursued. The final order of forfeiture, then, necessarily determined all third party claims to the proceeds and awarded clear title to the United States.

■ Comparing the scope of the district court's determinations to the relief sought in Uecker's complaint, it is apparent that the asserted avoidance claims are a collateral attack on the district court's judgment of forfeiture. Sections 547 and 548 of the Bankruptcy Code provide debtors-in-possession or trustees with the equitable power to undo or avoid specified pre-petition transactions where the debtor's property was transferred out of the debtor's possession. 5 COLLIERS ON BANKRUPTCY, ¶ 548.01 (15th rev. ed.). By avoiding the transaction, the representative of the debtor's estate re-establishes the debtor's interest in the previously transferred property. After the transaction is avoided, or partially avoided, the Code authorizes the estate's representative to recover the property, or if the court otherwise orders, the value of the property, for the benefit of the estate. 11 U.S.C. § 550. In this case, Uecker seeks to avoid the pre-petition Stipulation for Sale of Stock and to re-establish the debtor's interest in the proceeds of that sale on the basis that the debtor did not receive reasonably equivalent value in the exchange for its payments. To avoid the transaction, however, would require this court to recognize the ABL's interest in the proceeds and, effectively, overrule the district court's order that previously afforded clear title to the government. As in *Vereda*, this court is without power to determine whether the district court correctly forfeited the stock sales proceeds, including whether the

plaintiff's interest in recovering the proceeds by avoiding the sale was properly forfeited.

## II. The Criminal Forfeiture Proceedings Provided the Exclusive Forum for Adjudicating the Validity of the Estate's Interest in the Forfeited Proceeds.

▮ Under the forfeiture statutes, the appropriate forum for pursuing Uecker's third party interest in the forfeited proceeds was within the ancillary proceedings before the district court. Indeed, ancillary proceedings pursuant to § 853(n) are the exclusive means of protecting such interests. 21 U.S.C. § 853(k); *United States v. Phillips*, 185 F.3d 183, 186 (4th Cir.1999); *Reckmeyer*, 836 F.2d at 203. Although aware of the forfeiture proceedings, neither the debtor nor Uecker participated in the ancillary proceedings before the district court. Instead, Uecker argues that it was not required to bring its claim within the confines of the § 853(n) proceedings because its avoidance claims do not fit within the two kinds of claims that may be successfully vindicated under § 853(n), *i.e.*, a claim of superior interest in the property as of the date of the act which gave rise to the forfeiture of the property or claims by innocent purchasers of the property.

▮ While the range of third party interests exempted from forfeiture under § 853(n) is limited, *United States v. Reckmeyer*, 836 F.2d 200, 204 (4th Cir.1987), Uecker's argument that it did not need to participate in the ancillary proceedings must fail. Even accepting plaintiff's premise that its avoidance claims do not fit within the narrow ambit of interests that survive forfeiture, it is not just interests that can be successfully vindicated that must be brought in the ancillary proceedings. To the contrary, the forfeiture statute imposes an absolute bar on *all* suits

claiming an interest in forfeitable property unless the action is brought within the confines of an ancillary proceeding. Section 853(k), entitled "Bar on intervention," could not be more plain:

> Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may—
>
> * * *
>
> (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

§ 21 U.S.C. § 853(k).

By making ancillary proceedings the exclusive forum for protecting third party interests, the legislature has carefully balanced the need to provide all potential third party claimants with an opportunity to contest the forfeiture against the government's need for certainty of title before it liquidates forfeited property. While § 853(n) allows some third party interests to be forfeited along with the interest of the criminal defendant, *see* Michael Goldsmith & Mark Jay Linderman, *Asset Forfeiture and Third Party Rights: The Need for Further Law Reform*, 1989 Duke L.J. 1254, 1256–57 (Nov.1989)(listing examples), if all but two types of interests in forfeitable property could be raised outside of the ancillary proceedings, it would prevent the government from obtaining the clear title that it is statutorily entitled to receive at the conclusion of the ancillary proceedings.

Consistent with the plain language of the statute, the case law has uniformly found that § 853(k) imposes an absolute bar to actions that assert an interest in forfeitable property if they are commenced outside of the ancillary proceedings. *Phil-*

*lips,* 185 F.3d at 186 (invalidating foreclosure of property that was subject to federal forfeiture); *Roberts,* 141 F.3d at 1469 (barring fifth amendment takings claim for loss of ability to transfer property subject forfeiture).

Uecker's reliance on *Bailey v. United States,* 54 Fed.Cl. 459 (2002), to argue that it was not required to pursue its claims in the ancillary proceedings is not persuasive. In *Bailey,* criminal defense attorney F. Lee Bailey claimed that he entered into a contract where the government agreed to pay Bailey for his help in repatriating his client's foreign assets. Payment for Bailey's repatriation work was to come from the proceeds of his client's Biochem Pharma stock. Ultimately, the Biochem Pharma stock was subject to forfeiture. Although Bailey filed a third party claim of interest in the stock as part of the ancillary proceeding, he voluntarily dismissed that claim. The district court order of dismissal stated that Bailey would be estopped to pursue any further claim for the stock but that he had not forfeited his right to make a claim for his fees.

Following the forfeiture of the stock, Bailey sought recovery of his fees in a breach of contract action that he filed against the government in the Court of Federal Claims. The complaint alleged that Bailey was contractually entitled to receive an amount equal to the full appreciated value of the Biochem Pharma stock as payment for his repatriation services. In a motion to dismiss and at trial, the government argued that the doctrine of res judicata barred the contract claim because the dismissal of Bailey's § 853(n) claim was a final judgment on the merits. The court rejected the government's res judicata defense. In allowing the breach of contract claim to proceed, the court noted that § 853(n)(6) limits third party claimants to two bases of recovery, that

Bailey's claim did not fit within either category and that the Tucker Act specifically authorized Bailey to proceed before the Court of Federal Claims. While these attributes make *Bailey* similar to the case at bar, a close look at the court's decision reveals a key distinction that dictates a different result in this case. In *Bailey,* the breach of contract action did not assert any interest in the forfeitable property, namely the Biochem Pharma stock. It was simply an action to recover general damages for fees due under a contract. Although the amount of fees sought was based on the value of the stock, the contract claim did not assert any claim of interest in the stock, and resolution of the claim did not require the court to scrutinize or review any part of the forfeiture proceeding. Rather, the court's job was simply to decide whether the government had entered into a independent contractual arrangement to pay Bailey and, if so, to determine the terms of the arrangement. *Bailey,* 54 Fed.Cl. at 479–80.

Unlike the independent claim for damages in *Bailey,* Uecker is asserting an equitable power to avoid the pre-petition Stipulation for Sale of the ABL stock and re-establish the estate's interest in and right to the proceeds previously paid to the government. Both the stipulation and the district court's order approving that interlocutory sale are an integral part of the judicial proceedings that were finally concluded by the final order of forfeiture. To resolve plaintiff's claims, this court would have to scrutinize the propriety of the forfeiture of the proceeds flowing from the sale to determine whether plaintiff's interest in those proceeds should have been exempted from forfeiture. As discussed above, this court may not interfere with or review those matters which were finally determined by the district court.

For the reasons explained, summary judgment is granted in favor of the defendant United States of America and against the plaintiff Uecker & Associates, Inc.

Good cause appearing, IT IS SO ORDERED.