**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2378**

PROVIDENCE HALL ASSOCIATES LIMITED PARTNERSHIP,

　　　　　Plaintiff - Appellant,

　　　v.

WELLS FARGO BANK, N.A., successor in interest to Wachovia Bank, N.A.,

　　　　　Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.　Liam O'Grady, District Judge.　(1:14-cv-00352-LO-IDD)

Argued:　December 8, 2015　　　　　Decided:　March 11, 2016

Before WILKINSON, NIEMEYER, and DIAZ, Circuit Judges.

Affirmed by published opinion.　Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

**ARGUED**: Gary M. Bowman, Roanoke, Virginia, for Appellant. Jeffrey L. Tarkenton, WOMBLE CARLYLE SANDRIDGE & RICE, LLP, Washington, D.C., for Appellee. **ON BRIEF**: B. Chad Ewing, WOMBLE CARLYLE SANDRIDGE & RICE, LLP, Charlotte, North Carolina, for Appellee.

DIAZ, Circuit Judge:

Providence Hall Associates ("PHA") appeals the district court's dismissal of its lawsuit against Wells Fargo Bank. PHA contends that the district court erroneously gave res judicata effect to various sale orders issued during PHA's Chapter 11 bankruptcy. We conclude that the elements of res judicata are satisfied and therefore affirm.

I.

PHA is a Virginia-based limited partnership that, prior to its bankruptcy, owned a handful of properties in several states. It entered three transactions with Wells Fargo's predecessor-in-interest: (1) a $2.5 million loan, (2) a $500,000 line of credit, and (3) an interest-rate-swap agreement, whereby PHA exchanged a fixed interest rate for a floating one based on the one-month U.S. Dollar London Interbank Offered Rate ("LIBOR"). The loan and the line of credit contained a cross-default clause—meaning a default on either amounted to a default on both—and were secured by deeds of trust, mortgages, and assignments of rent for certain PHA real estate holdings.

PHA subsequently defaulted on the loans and, as a result, filed a petition for Chapter 11 bankruptcy in March 2011. Shortly thereafter, Wells Fargo informed PHA that an event of

2

default took place under the interest-rate-swap agreement, triggering $317,850 in termination damages.

Wells Fargo filed a proof of claim in the Chapter 11 case for nearly $3 million. PHA objected, filing an adversary complaint, which it later amended. In that amended complaint, PHA alleged that Wells Fargo falsely represented that it "would forbear collection of the principal balance of the $500,000 [line of credit]," J.A. 69, ultimately causing PHA to default and enter bankruptcy.

Meanwhile, the United States Trustee had moved to convert the bankruptcy case to a Chapter 7 proceeding or dismiss it altogether based on PHA's failure to file monthly financial reports. Wells Fargo filed a memorandum in support of the motion, repeating the United States Trustee's allegations and contending that, among other inappropriate actions, PHA's principals used Wells Fargo's cash collateral to pay "distributions" to themselves. J.A. 123. After reviewing the arguments of the United States Trustee and Wells Fargo, the bankruptcy court opted to appoint Marc Albert as a Chapter 11 trustee rather than dismiss the bankruptcy case or convert it into a Chapter 7 proceeding.

Trustee Albert took a number of steps to bring PHA out of bankruptcy—most important here, obtaining court approval to sell two of the bankruptcy estate's properties to satisfy the debts

3

owed to Wells Fargo. In both of his sale motions under 11 U.S.C. § 363(b), (f), Trustee Albert requested that the proceeds (minus certain expenses) be distributed to Wells Fargo. J.A. 183, 231. Additionally, both motions recognized PHA's obligations to Wells Fargo under the two loans and the interest-rate-swap agreement. See, e.g., J.A. 170–72, 174–75, 177, 219–21, 224. The bankruptcy court granted the motions, noting in its orders that PHA was in debt to Wells Fargo, J.A. 376, 386–88, and that the balance of the sale proceeds should be distributed to Wells Fargo, J.A. 380, 388. In the final sale order, the court explicitly stated that sale proceeds should be paid to Wells Fargo "up to the amount of the WFB Obligations," J.A. 388, where "WFB Obligations" was a defined term from Trustee Albert's sale motion representing PHA's debts arising out of the two loans and the swap agreement, J.A. 220.

Around the time Trustee Albert moved to sell the bankruptcy estate's properties in satisfaction of PHA's outstanding debts to Wells Fargo, he also consented to the dismissal without prejudice of PHA's adversary complaint.

By November 2012, the proceeds of the sales had satisfied PHA's debts to Wells Fargo. Consequently, Victor Guerrero—an equity holder and principal of PHA—filed a motion to dismiss the Chapter 11 proceeding, which the bankruptcy court granted with Trustee Albert's consent.

4

More than a year later, PHA filed suit in Virginia state court, which Wells Fargo removed to federal court. Along with repeating the claims made in the bankruptcy adversary complaint, PHA alleged new theories of lender liability. Relevant here, PHA claimed that the interest-rate-swap transaction was a "sham" because "the LIBOR rate was illegally rigged and manipulated." Appellant's Br. at 7–9; see also J.A. 12–14.

Wells Fargo filed a motion to dismiss, which the district court granted on res judicata grounds, giving preclusive effect to the bankruptcy court's sale orders. The court then denied PHA's motion for reconsideration.

This appeal followed.

II.

We review de novo the district court's dismissal based on res judicata. Brooks v. Arthur, 626 F.3d 194, 200 (4th Cir. 2010).

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)). Three elements must be satisfied for res judicata to apply. "[T]here

5

must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." Id. at 354–55. Along with these "three formal elements" of res judicata, "two practical considerations should be taken into account." Grausz v. Englander, 321 F.3d 467, 473 (4th Cir. 2003). First, we consider whether the party or its privy knew or should have known of its claims at the time of the first action. See id. at 473–74. Second, we ask whether the court that ruled in the first suit was an effective forum to litigate the relevant claims. See id. at 474.

We address the three core res judicata requirements in turn, followed by the two "practical considerations" from Grausz.

### A.

The district court recognized the first res judicata requirement—that the sale orders are final orders on the merits— as "the clearest hurdle for Wells Fargo to overcome." J.A. 38. Nevertheless, the court determined that Wells Fargo prevailed, primarily relying on cases from the Fifth, Sixth, and Seventh Circuits, which concluded that bankruptcy sale orders were final orders on the merits. J.A. 39 (citing Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565 (6th Cir. 2008); Bank of Lafayette v.

6

Baudoin (In re Baudoin), 981 F.2d 736 (5th Cir. 1993); Gekas v. Pipin (In re Met-L-Wood Corp.), 861 F.2d 1012 (7th Cir. 1988)).[1]

While PHA concedes that the sale orders are "final," it presents a litany of arguments that they are not "on the merits." Appellant's Br. at 33. We are unconvinced, concluding as the district court did that the first prong of res judicata is satisfied.

1.

We begin by turning to the cases from our sister circuits upon which the district court relied. We, too, find them persuasive and reject PHA's attempts to distinguish them.

In Met-L-Wood, the debtor in a Chapter 11 proceeding filed a motion to sell bankruptcy estate assets, which the court granted. 861 F.2d at 1015. While § 363(b)(1) requires that the seller of estate property give notice to creditors, some unsecured creditors did not receive notice. Id. at 1017. After

---

[1] Other cases have held or explained in dicta that bankruptcy sale orders can give rise to res judicata. See, e.g., Silverman v. Tracar, S.A. (In re Am. Preferred Prescription, Inc.), 255 F.3d 87, 92 (2d Cir. 2001) (citing two cases, including Met-L-Wood, that gave res judicata effect to sale orders to support the proposition that "some orders of bankruptcy courts, entered in the course of Chapter 11 proceedings prior to confirmation . . . are entitled to res judicata effect"); Robertson v. Isomedix, Inc. (In re Int'l Nutronics, Inc.), 28 F.3d 965, 969–71 (9th Cir. 1994) (concluding that a bankruptcy court order confirming a sale barred antitrust claims under res judicata principles).

the sale, the bankruptcy case was converted into a Chapter 7 proceeding, and a trustee was appointed. Id. at 1015. The trustee then "investigated the circumstances surrounding the judicial sale and eventually decided that there had been skullduggery of two kinds." Id. Seeking to remedy said skullduggery on behalf of unsecured creditors, the trustee filed suit in federal district court against the debtor-corporation, its owner, and others involved in the judicial sale, alleging various common law and statutory claims. Id. at 1016.

The Seventh Circuit concluded that the district court properly dismissed the trustee's suit. Id. at 1018. The court explained that to the extent the trustee's claims were derived from his representation of the unsecured creditors who had notice of the judicial sale, res judicata barred the trustee's lawsuit from moving forward. Id. at 1016–17. But, to the extent the trustee's claims were derived from unsecured creditors who had not received notice of the judicial sale, res judicata proved no bar because this subset of unsecured creditors were not parties to the sale proceeding. Id. at 1017. Nevertheless, the court held that the trustee's claims were otherwise barred because the sale proceeding was in rem, "transfer[ring] property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding." Id.

8

In Baudoin, the plaintiffs and their wholly owned company filed for Chapter 7 bankruptcy based on an inability to meet loan obligations to a particular creditor bank. 981 F.2d at 737–38. The plaintiffs' personal bankruptcies were consolidated, and a trustee was appointed. Id. at 738. Upon the trustee's motion, two properties securing the plaintiffs' debt were sold at auction, leading to the plaintiffs' discharge from bankruptcy. Id. Three years later, the plaintiffs sued the creditor bank, alleging that it "forced them and their company . . . into bankruptcy." Id.

The Fifth Circuit concluded that res judicata precluded the plaintiffs' suit. Id. at 739. In doing so, the court looked to, among other considerations, "the important interest in the finality of judgments in a bankruptcy case." Id. (quoting Hendrick v. H.E. Avent, 891 F.2d 583, 587 n.9 (5th Cir. 1990)). Specifically, the court explained that the goals of "[r]estraining litigious plaintiffs from taking more than 'one bite of the apple,'" and ensuring "that bite is to be taken as expeditiously and economically as possible" were to be given great weight, particularly in light of "spiraling litigation costs" and docket congestion. See id. at 739–40 (quoting Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 870 (2d Cir. 1991)).

9

Finally, in Winget, the bankruptcy court ordered the sale of the Chapter 11 debtors' assets, with the proceeds of the sale going to an outstanding balance on a credit agreement. 537 F.3d at 571. Winget, who owned the debtor-companies and guaranteed their debt, later sued various parties, asserting that those parties intentionally devalued the companies' assets through conduct taking place before the bankruptcy proceeding. Id. at 568–69, 579. The Sixth Circuit held that Winget's claims were barred by res judicata. Id. at 577–81. In concluding that the sale order was a final order on the merits, the court looked to Baudoin and Met-L-Wood, as well as the policy of promoting finality that underpins res judicata. See id. at 578–79.

PHA's attempts to meaningfully distinguish these cases are unavailing. As for Winget, PHA argues that the Sixth Circuit held that the sale order was on the merits because Winget objected (though he withdrew this objection) with the same lender liability claim that he later brought in the district court. Appellant's Br. at 32 (citing Winget, 537 F.3d at 580); id. at 35–36. But the passage of Winget that PHA cites does not relate to the question of whether a sale order is a final order on the merits. Instead, the Sixth Circuit discussed Winget's objection to show that he was not "unaware of all of the facts needed to bring the claims before the bankruptcy court at the time of th[e] proceeding." Winget, 537 F.3d at 580.

10

Accordingly, PHA's reliance on this factual distinction is misplaced.

With regard to Baudoin, PHA contends that it is distinguishable because the debtors never objected to the sale orders or the creditor's claim in the bankruptcy court, unlike PHA, which objected to Wells Fargo's proof of claim. We fail to see how this helps PHA. As the Baudoin court explained, sale orders "are final judgments on the merits for res judicata purposes, 'even though the order neither closes the bankruptcy case nor disposes of any claim.'" 981 F.2d at 742 (quoting Hendrick, 891 F.2d at 586). It is irrelevant whether an objection was made.

As for Met-L-Wood, PHA argues that the court did not hold that "the trustee's . . . claims seeking damages against the seller and purchaser" were barred by res judicata. Reply Br. at 15. This is arguably true because the trustee's claims were derived in part from unsecured creditors who were not party to the sale proceeding, and therefore the court could not resolve the entire case on res judicata grounds. But, the Seventh Circuit subsequently treated the res judicata analysis in Met-L-Wood as a holding. See Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi., 649 F.3d 539, 549 (7th Cir. 2011) ("We held in [Met-L-Wood] that a bankruptcy trustee was barred from filing a RICO suit against the debtor and others involved in a

11

bankruptcy asset sale after the sale had been confirmed; res judicata applied . . . ." (emphasis added)). More importantly, because we of course are not bound by Met-L-Wood regardless of what it held, it is not particularly important to this court whether the passage in question was dictum. What matters is whether we find the Seventh Circuit's analysis persuasive. Here, we do.

PHA also argues that Met-L-Wood is distinguishable because PHA's claims are unrelated to the sale proceedings themselves, while in Met-L-Wood, the trustee alleged fraud surrounding the sale. Reply Br. at 15–16. We grant that this is a distinction, but it is not a meaningful one.

To sell bankruptcy estate assets outside the ordinary course of business, the trustee of the estate or the debtor-in-possession must initiate the sale proceeding. See 11 U.S.C. §§ 363(b)(1), 1107(a). Here, the trustee moved to sell property in satisfaction of specifically identified obligations arising out of PHA's transactions with Wells Fargo. The bankruptcy court approved these sales, finding them to be "in the best interests of the Estate." E.g., J.A. 387; see also Rose v. Logan, No. RDB-13-3592, 2014 WL 1236008, at *7 (D. Md. Mar. 25, 2014) (describing the standard for approving a sale of bankruptcy estate assets); Appellant's Br. at 22 ("The standard for approving the sale is essentially a business judgment test,

12

or whether it is in the best interests of the estate to sell the property." (citing 3 <u>Collier on Bankruptcy</u> ¶ 363.02[1][f]) (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2005)).

The key questions thus arise: if PHA did not owe the amount that Wells Fargo claimed it was due, why would the trustee—the bankruptcy estate's representative—move to sell estate assets in full satisfaction of Wells Fargo's claimed debt, and why would the bankruptcy court approve the sale? The motions to sell in this case effectively conceded the validity of PHA's obligations to Wells Fargo, and the proceeds of the sales satisfied those obligations. It would make little sense after the sales were made, the debt settled, and the bankruptcy proceeding closed, to then allow PHA to challenge in a new judicial proceeding the propriety of the transactions giving rise to its now-extinguished debt. To allow such a challenge would achieve little more than upending the purpose of res judicata: promoting finality and judicial economy. <u>Montana v. United States</u>, 440 U.S. 147, 153-54 (1979); <u>see also</u> <u>Winget</u>, 537 F.3d at 578-79; <u>Baudoin</u>, 981 F.2d at 739-40.

Furthermore, the preclusive effect of the bankruptcy court's sale orders is consistent with the "fundamental purpose" of Chapter 11 bankruptcy: "rehabilitation of the debtor." <u>Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co., L.L.C.)</u>, 403 F.3d 164, 170 (4th Cir. 2005) (quoting <u>NLRB v.</u>

13

_Bildisco & Bildisco_, 465 U.S. 513, 528 (1983)). To fulfill this objective, "[c]entralization of disputes concerning a debtor's legal obligations is especially critical" because it allows "reorganization [to] proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." _Id._ (quoting _Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)_, 922 F.2d 984, 989 (2d Cir. 1990)). Allowing "piecemeal litigation" as PHA urges, after all the debts and dust of a bankruptcy have settled, would invite precisely the inefficient decentralized proceedings that Chapter 11 bankruptcy is designed to avoid. _See_ _id._

We conclude—in accord with our sister circuits as well as the purpose of res judicata and Chapter 11 bankruptcy—that the sale orders in this case are final orders on the merits.

2.

PHA presents a series of other arguments that we should break ranks with our sister circuits and hold that the sale orders fail to satisfy the first prong of res judicata. None are persuasive.

First, PHA argues that because its adversary complaint was dismissed without prejudice, its present lawsuit is not precluded. The dismissal of the adversary complaint is not relevant to our analysis, as Wells Fargo does not contend that

14

this dismissal gives rise to res judicata.  Instead, the sale orders are what preclude the claims now before the court.

Second, PHA contends that because a bankruptcy court sale order is an in rem proceeding, Met-L-Wood, 861 F.2d at 1017, it does not have a res judicata effect on in personam lender liability claims.  In support, PHA points to M.W. Zack Metal Co. v. Int'l Navigation Corp., 510 F.2d 451 (4th Cir. 1975).  Zack Metal, however, does not address res judicata.  As Wells Fargo correctly points out, "Zack Metal stands for the proposition that a party cannot file an in personam action on or otherwise attempt to collect on an in rem judgment by means other than the specific property at issue in the in rem lawsuit."  Appellee's Br. at 23 (citing Zack Metal, 510 F.2d at 452–53).

Moreover, the circuit cases we discussed earlier belie the notion that the in rem nature of a sale order precludes the application of res judicata to transactionally related lender liability claims.  A Chapter 11 sale order can give rise to res judicata because the estate representative—the trustee or the debtor-in-possession—has ample opportunity to assert a lender liability claim before selling off estate assets in satisfaction of debts.  See 18 Charles Alan Wright et al., Federal Practice and Procedure § 4412 (2d ed. 2012) (explaining that because bankruptcy proceedings are "intended to resolve all claims in a

15

single definitive proceeding," in personam claims that could have been raised during bankruptcy should be precluded).

Third, PHA maintains that County Fuel Co. v. Equitable Bank Corp., 832 F.2d 290 (4th Cir. 1987), precludes the application of res judicata in this case. There, a creditor filed a proof of claim in a Chapter 11 proceeding for the secured balance of a loan, and the debtor-in-possession did not object, except with respect to a claim for attorneys' fees. Cty. Fuel, 832 F.2d at 291. The creditor's claim was therefore automatically allowed. Id. at 291–92; see 11 U.S.C. § 502(a).

After filing its proof of claim, the creditor moved to lift the bankruptcy court's automatic stay so it could proceed against its collateral. Cty. Fuel 832 F.2d at 291. The bankruptcy court granted the lift-stay motion, the district court affirmed, and the creditor eventually recovered the amount of its claim. Id. at 291–92. About two years later, the debtor (County Fuel) sued the creditor, asserting that it breached an oral promise related to the loan. Id. at 292. The district court dismissed the case on res judicata grounds, giving preclusive effect to the automatic allowance of the creditor's claim. Id.

We affirmed on waiver grounds rather than res judicata, commenting in dicta that "[i]t is doubtful that in strict contemplation County Fuel's . . . claim was . . . barred under

16

res judicata principles." Id. at 292–93. We gave two reasons. First, we looked to the Restatement (Second) of Judgments § 22, which reads:

> (1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
>
> (2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
> (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
> (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

Id. at 292 & n.1. We explained that under section 22(1), (2)(a), "the failure to interpose . . . an available [permissive] 'counterclaim' does not, as a matter of res judicata, bar its subsequent assertion as an independent claim for relief." Id. Nevertheless, we later applied an exception to this rule found in section 22(2)(b) of the Restatement, necessitating the barring of County Fuel's claim, because "[t]he practical effect of a successful prosecution of County Fuel's claim would be to require [the creditor] to make restitution of the amount realized upon its claim." Id. at 293–94.

Second, we explained in dicta that "it is doubtful that the 'automatic allowance' under 11 U.S.C. § 502(a) of a claim not

17

objected to constitutes a 'final judgment'" because (1) objections could be made after automatic allowance of a claim, (2) automatic allowance was not "final" for purposes of appellate review, and (3) an allowed claim can later be disallowed under § 502(j). Id. at 292.[2]

County Fuel does not control our decision in this case, most notably because its statements regarding res judicata are dicta. See Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 530–31 (9th Cir. 1998) (explaining that County Fuel merely expressed doubts about the application of res judicata, but decided the case on waiver grounds). Additionally, while the County Fuel court questioned the finality of an automatic claim allowance in suggesting that res judicata did not apply, PHA concedes the finality of the sale orders. Appellant's Br. at 33. Finally, the County Fuel court's discussion of counterclaims and section 22 of the Restatement (Second) of Judgments is not relevant to our analysis here. As PHA acknowledges, res judicata bars claims that could have been asserted in the bankruptcy proceeding that are "based on the same underlying transaction" as the sale orders. Appellant's

---

[2] We also suggested in dicta that a lift-stay order should not give rise to res judicata. Cty. Fuel, 832 F.2d at 293. While PHA does not rely on this portion of County Fuel, we later address why lift-stay orders are distinguishable from the bankruptcy court's sale orders.

18

Br. at 25–26 (quoting Clodfelter v. Republic of Sudan, 720 F.3d 199, 210 (4th Cir. 2013)). Here, Trustee Albert could have litigated the extent of PHA's obligations to Wells Fargo rather than move to sell estate property in satisfaction of those obligations, and, as explained below, PHA's present claims are transactionally related to the facts underlying the sale orders. This gives rise to the preclusion of PHA's present claims.

This brings us to PHA's final argument respecting the first prong of res judicata. PHA contends that an unreported district court decision declining to give preclusive effect to a lift-stay order weighs in favor of concluding that we should not give res judicata effect to sale orders. Appellant's Br. at 24–28 (citing Canterbury v. J.P. Morgan Mortg. Acquisition Corp., No. 10-cv-54, 2010 WL 5314543 (W.D. Va. Dec. 20, 2010)). We are unconvinced.

Not only is Canterbury not binding authority, but we do not find it illuminating in our analysis of whether sale orders can give rise to res judicata. Here, unlike the lift-stay order in Canterbury, the sale orders at issue effectively recognize and satisfy particular debts. It bears repeating that it would be counterproductive to liquidate the bankruptcy estate's property to pay off debts owed to a creditor—bringing about the close of bankruptcy proceedings—only to later allow claims to be brought against that creditor regarding the now-satisfied debts. Such a

19

result would be the model of inefficiency, at odds with the purpose of res judicata and Chapter 11 bankruptcy.

## B.

We turn to the second prong of the res judicata analysis: an identity of claims between the first and second suit. "[W]e follow the 'transactional' approach" in analyzing this prong, meaning that "res judicata will bar a 'newly articulated claim[]' if it is based on the same underlying transaction [involved in the first suit] and could have been brought in the earlier action." Clodfelter, 720 F.3d at 210 (quoting Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 162 (4th Cir. 2008)).

Here, the sale orders arose out of the same nucleus of facts as PHA's claims in this case: the circumstances surrounding the three agreements between PHA and Wells Fargo. The sale orders directed the liquidation of certain properties in satisfaction of PHA's obligations arising from those transactions. And, in the instant lawsuit, PHA challenges the propriety of the transactions. Accordingly, the second prong is satisfied. See Winget, 537 F.3d at 580-81 (finding that the transactional test was met); Baudoin, 981 F.2d at 743-44 (same).

## C.

We next move to the final core requirement of res judicata: "an identity of parties or their privies in the two suits."

20

Pueschel, 369 F.3d at 354–55 (emphasis added). PHA argues that this prong is not satisfied because it is not the same party as the trustee. To achieve its desired result, PHA ignores the "or their privies" language from the res judicata test, instead stating the identity-of-the-parties element as requiring that "the parties in the prior case were identical to the parties in the present case." Appellant's Br. at 21 (citing Pueschel, 369 F.3d at 354); id. at 39 (arguing that the trustee must be "identical to the debtor" (emphasis in original)). This is not the law.

Under the correct test, there is no dispute between the parties that this prong of res judicata is satisfied, as PHA says in both its opening and reply briefs that "[t]he trustee is in privity with the debtor as representative of the debtor's bankruptcy estate." Appellant's Br. at 39 (emphasis in original); Reply Br. at 9 (emphasis in original).

D.

Grausz directs courts to assess two additional res judicata considerations: whether the party or its privy knew or should have known of its claims at the time of the first action and whether the court that ruled in the first suit was an effective forum to litigate the relevant claims. See 321 F.3d at 473–74. PHA's argument with respect to these factors turns on whether it, as a debtor who was no longer a debtor-in-possession, could

21

have effectively litigated its claims against Wells Fargo. <u>See</u>, <u>e.g.</u>, Appellant's Br. at 36–43 (contending that the bankruptcy court improperly barred it from participating in the bankruptcy in violation of 11 U.S.C. § 1109(b)).

PHA's argument is based on a faulty premise. It is not PHA's actions in the bankruptcy court that now preclude it from asserting claims against Wells Fargo. Instead, it is the trustee's actions as PHA's privy that give rise to res judicata. Thus, the question before us is not whether PHA could effectively litigate in the bankruptcy court in its own right, but whether the trustee could. If we concluded otherwise, we would effectively alter the third res judicata prong to require a strict identity of parties rather than an identity of the parties <u>or their privies</u>. This we cannot do. Because PHA offers no argument that the trustee could not effectively litigate in the bankruptcy court, the <u>Grausz</u> factors are satisfied.[3]

---

[3] PHA says that it could not have known of certain claims related to the swap agreement during the bankruptcy proceeding because "[t]he artificiality of the LIBOR market was not publicly revealed until July 2012"—after the trustee was appointed. Appellant's Br. at 44. Since it is the trustee, not PHA, whose actions in the bankruptcy court now bind PHA, the relevant question is whether the trustee could have known about the supposed "artificiality of the LIBOR market" during the bankruptcy. The final sale order was entered in September 2012, after the date upon which PHA says the artificiality of the LIBOR market was publicly revealed. Thus, PHA's argument fails.

22

III.

For the reasons given, we affirm the judgment of the district court.

AFFIRMED