**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1790**

CATJEN, LLC,

    Plaintiff - Appellee,

  v.

HUNTER MILL WEST, L.C.,

    Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:18-cv-01546-LMB-JFA)

Submitted: April 29, 2021          Decided: July 8, 2021

Before KING, DIAZ, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

J. Chapman Petersen, David L. Amos, CHAP PETERSEN & ASSOCIATES, PLC, Fairfax, Virginia, for Appellant. Nicholas M. DePalma, Christian R. Schreiber, VENABLE LLP, Tysons, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following protracted litigation in bankruptcy court and Virginia state courts, Catjen, LLC ("Catjen"), commenced the instant action in federal district court seeking to recover the outstanding balance on a $1 million note executed by Hunter Mill West, L.C. ("HMW"), in favor of Catjen's predecessor-in-interest, BDC Capital, LLC ("BDC"). Two questions lie at the heart of this dispute: (1) whether, after the note matured, simple or compound interest applied; and (2) whether, after the bankruptcy court issued its claims order, the interest rate was determined by the federal rate or the rate provided in the note. In granting summary judgment to Catjen, the district court concluded that interest compounded at the note's postjudgment rate. HMW appeals, and we affirm.

"We review de novo a district court's grant or denial of a motion for summary judgment, construing all facts and reasonable inferences therefrom in favor of the nonmoving party." *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In 2008, HMW executed a one-year note in favor of BDC, set to mature on November 19, 2009. The note provided that, before maturity, interest accrued at a rate of 14%, compounded monthly; that, upon default, BDC could unilaterally increase the interest rate by 10 points, to 24% (the "default interest rate"); and that, in the event that a court entered judgment on the note against HMW, the judgment would bear interest at the default interest rate of 24%. After HMW failed to satisfy its obligations under the note, BDC

2

placed HMW in default on September 24, 2010. Two years later, on November 9, 2012, HMW filed for bankruptcy.

In a proof of claim filed in the bankruptcy court, BDC asserted that HMW owed roughly $1.8 million on the note. HMW objected, maintaining that the debt was closer to $1.5 million. In support of its argument, HMW submitted a spreadsheet, prepared by its expert, that calculated the balance due from the note's inception until the date of the bankruptcy petition. Critically, HMW's expert compounded interest throughout this entire period. Following a hearing, the bankruptcy court sustained HMW's objection and, aside from one minor adjustment not pertinent here, adopted HMW's calculations in full. Accordingly, the bankruptcy court entered a claims order fixing BDC's claim at $1,504,998.55.

In the instant action, Catjen and HMW argue over what, if any, preclusive effect the claims order has on the issue of compounding interest. Under the applicable state law,

> [T]he proponent of issue preclusion must demonstrate that: (1) the parties to the two proceedings, or their privies, be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior action and must have been essential to the prior judgment; and (3) the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action.

*Hately v. Watts*, 917 F.3d 770, 778 (4th Cir. 2019) (footnote and internal quotation marks omitted) (discussing Virginia law). Here, the parties disagree only on the second element—specifically, whether the claims order conclusively established that interest compounded after the note matured.

3

As noted above, the bankruptcy court used HMW's own spreadsheet to determine the amount due under the note, and those calculations included compounding interest from the maturity date through the date of the bankruptcy petition. And given that the application of compounding interest necessarily impacted the value of BDC's claim as recorded in the claims order, it stands to reason that this issue was necessary to the bankruptcy court's decision. For these reasons, we agree with the district court's determination that HMW is precluded from relitigating the issue of postmaturity compounding interest.[1]

HMW's arguments to the contrary are not persuasive. First, HMW notes that the spreadsheet's calculations ended on the petition date, November 9, 2012; thus, according to HMW, even assuming that the bankruptcy court adopted the spreadsheet's calculations, the claims order could be preclusive only through that date. But a bankruptcy court necessarily decides the value of a claim "as of the date of the filing of the petition," 11 U.S.C. § 502(b), so the fact that the spreadsheet ended on the petition date is unilluminating. In any event, HMW's argument presupposes that the petition date is somehow relevant to the compounding interest issue, yet HMW identifies no legal or

---

[1] HMW also seeks to invoke res judicata, relying on the bankruptcy court's refusal to allow BDC to charge late fees after the note matured. As relevant here, the bankruptcy court determined that late fees were permissible only when monthly payments were due, but that monthly payments ceased at maturity. From this, BDC extrapolates that compounding interest—which the note allowed when a monthly payment was missed— likewise could apply only until the note matured. But the bankruptcy court never announced such a finding, and, moreover, the claims order's incorporation of postmaturity compounding interest belies this argument.

factual basis—nor do we discern any—for concluding that the filing of its bankruptcy petition altered its obligations under the note.

Next, HMW contends that the claims order is not preclusive because BDC's own submissions during the bankruptcy proceedings assumed that a simple interest rate of 14% applied after the petition date. But the bankruptcy court declined to adopt BDC's calculations; thus, they were not essential to the court's judgment. HMW also asserts that the bankruptcy court did not explicitly indicate whether it had relied on the spreadsheet. However, given that the court sustained HMW's objection and, but for one deviation, fully adopted HMW's calculations, we are satisfied that the court made clear its reliance on the spreadsheet.

Finally, HMW maintains that the spreadsheet's use of compounding interest was based on a mistaken formula. And because, in some instances, a party is not estopped from correcting its previously erroneous position on a question of law—such as the interpretation of a contract—HMW insists that it should be able to correct this error going forward. In support of this argument, HMW attempts to equate res judicata with the doctrine of judicial estoppel, which "prohibits a party from taking inconsistent positions within a single action." *CVAS 2, LLC v. City of Fredericksburg*, 766 S.E.2d 912, 919 n.5 (Va. 2015) (internal quotation marks omitted). As HMW points out, judicial estoppel does not prevent a party "who has taken an erroneous position on a question of law . . . from later taking the correct position, provided [the party's] adversary has suffered no harm or prejudice by reason of the change." *Lofton Ridge, LLC v. Norfolk S. Ry. Co.*, 601 S.E.2d

5

648, 651 (Va. 2004) (internal quotation marks omitted). Thus, HMW reasons that, because judicial estoppel does not apply, neither should res judicata.

This argument, however, fundamentally misunderstands the doctrine of judicial estoppel. First, judicial estoppel is inapplicable not because of the exception on which HMW relies, but because the doctrine is limited to instances in which the inconsistent positions are taken within the same action. Obviously, the instant proceedings are not the same as those that occurred in the bankruptcy court. Second, and more to the point, res judicata and judicial estoppel simply are not equivalent doctrines: whereas res judicata seeks to "promot[e] finality and judicial economy," *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 279 (4th Cir. 2016), judicial estoppel is a doctrine "of fair play" designed to prevent a party from "talk[ing] through both sides of his mouth," *Wooten v. Bank of Am., N.A.*, 777 S.E.2d 848, 850 (Va. 2015). Thus, HMW cannot use the inapplicability of judicial estoppel to evade the application of res judicata.

In sum, we conclude that the claims order is preclusive as to the appropriate method for calculating interest after the note matured. Consequently, we affirm the district court's decision to bar HMW from relitigating this issue.[2]

Turning to the rate of interest, HMW argues that the federal rate, 28 U.S.C. § 1961(a), should apply to the amount owed under the claims order. Under § 1961(a), the federal interest rate "shall be allowed on any money judgment in a civil case recovered in

---

[2] As a result, we do not reach HMW's argument based on the plain language of the note.

6

a district court."  28 U.S.C. § 1961(a).  However, although "§ 1961 provides a standard rate of post-judgment interest, the parties are free to stipulate a different rate, consistent with state usury and other applicable laws."  *Hymel v. UNC, Inc.*, 994 F.2d 260, 266 (5th Cir. 1993) (internal quotation marks omitted); *see FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 147 (2d Cir. 2010) ("[P]arties are free to agree to a different post-judgment interest rate by contract, provided that they do so through clear, unambiguous and unequivocal language." (internal quotation marks omitted)); *Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005) ("[P]arties may contract to, and agree upon, a post-judgment interest at a rate other than that specified in § 1961.").

Here, the note clearly stipulated that, following entry of judgment, interest would accrue at a rate of 24%.  Thus, assuming without deciding that the claims order is a money judgment governed by § 1961, we conclude that the terms of the note supplanted the federal interest rate.[3]

Accordingly, we grant the parties' joint motion to submit this case on the briefs and affirm the district court's judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

---

[3] We find that HMW has waived its remaining claims—including those based on Fed. R. Bankr. P. 9024 and Catjen's alleged failure to mitigate—by not advancing them in its summary judgment briefing.  *See Cox v. SNAP, Inc.*, 859 F.3d 304, 308 n.2 (4th Cir. 2017).